LEWIS, J.
Lazaro E. Sosa seeks review of the decision of the Third District Court of Appeal in Safeway Premium Finance Co. v. Sosa, 15 So.3d 8 (Fla. 3d DCA 2009), asserting that it expressly and directly conflicts with the decisions of the Fourth District Court of Appeal in Olen Properties Corp. v. Moss, 981 So.2d 515 (Fla. 4th DCA 2008), and Smith v. Glen Cove Apartments Condominiums Master Ass’n, Inc., 847 So.2d 1107 (Fla. 4th DCA 2003). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
This appeal arises from a motion for class certification filed in the trial court by Sosa. That motion emanated from a cause of action initiated by Sosa in which Sosa claimed that Safeway Premium Insurance Company (“Safeway”) violated sections 627.840(3)(b) and 627.835, Florida Statutes (2003), by knowingly overcharging him an additional service charge of $20 twice in a twelve-month period in two premium finance agreements which he entered into with Safeway. The trial court granted the motion for class certification. The Third District Court of Appeal, however, re *98 versed the order and held that the trial court erred because Sosa and the putative class members did not satisfy the requirements of commonality and predominance needed for class certification under Florida Rule of Civil Procedure 1.220. This discretionary review proceeding followed.
The decision of the Third District was incorrect because, in making its own factual findings as to whether Sosa and the putative class members satisfied rule 1.220, the Third District afforded no deference to the trial court’s actual factual findings and conducted a de novo review. That constituted error because, as demonstrated by Glen Cove and Olen Properties, the proper appellate standard of review for a grant of class certification is abuse of discretion.
Furthermore, the Third District incorrectly addressed whether Sosa satisfied section 627.835’s “knowingly” requirement. It also incorrectly held that Sosa and the putative class members failed to satisfy rule 1.220’s commonality and predominance requirements. In so holding, the Third District created conflict with Glen Cove and Olen Properties. We conclude that Glen Cove provides a proper analysis of rule 1.220’s commonality and predominance requirement, and Olen Properties provides a proper analysis of rule 1.220’s commonality requirement. Therefore, we quash the Third District’s decision in Sosa and approve the decisions in Glen Cove and Olen Properties.
FACTS
In December 2002, Sosa purchased an automobile insurance policy from United Automobile Insurance Company (“United Auto”). Concomitant to this agreement, Sosa entered into a six-month premium finance agreement with Safeway, an affiliate of United Auto. United Auto and Safeway also share some of the same stockholders.
A premium finance agreement is an agreement between an insured and a premium finance company in which the premium finance company agrees to pay the insurer the insured’s total insurance premium. See § 627.827, Fla. Stat. (2010).[1] In return, the insured repays, with service charges and a possible “additional service charge,” the premium finance company in monthly installments. See id. A “service charge,” which is usually in the form of interest on the amount financed, is added to the principal amount billed to the insured by the premium finance company “for financing the premiums under the agreement.” § 627.840(2), Fla. Stat. (2010). An “additional service charge” is a statutorily limited service charge that may be imposed in addition to a service charge. See id. § 627.840(3)(a). For example, under section 627.840(3)(b), a premium finance company may assess to an insured a service charge that does not exceed “a maximum of $12 per $100 per year.” In addition to this service charge, a premium finance company may make an “additional [service] charge not exceeding $20,” which “may be charged only once in a 12-month period for any one customer unless that customer’s policy has been canceled due to nonpayment within the immediately preceding 12-month period.” Id.
*99 Under the first six-month premium finance agreement between Sosa and Safeway, Safeway agreed to, and did, pay the entire automobile insurance premium to United Auto on behalf of Sosa. In return, Sosa agreed to, and did, pay to Safeway in equal monthly installments the amount advanced by Safeway to United Auto for his automobile insurance premiums plus a service charge — a.k.a., a finance charge — of 12% per annum interest and an additional service charge of $20. In May 2003, Sosa renewed his insurance policy with United Auto and entered into a second six-month premium finance agreement with Safeway. The terms of the second agreement mirrored the terms of the first agreement and included a second additional service charge of $20. Sosa also made all payments due to Safeway under the second agreement.
In November 2003, Sosa renewed his automobile insurance with United Auto and entered into a third six-month premium finance agreement with Safeway. Although that agreement also contained an additional service charge of $20, Safeway waived that charge by way of a $20 credit to Sosa’s account.[2] Safeway granted Sosa that waiver because it found that it had charged Sosa an additional service charge of $20 during the six-month period preceding the third premium finance agreement.
Safeway discovered its November 2003 overcharge when it checked Sosa’s account in accordance with a manual system designed to spot and correct such illegal charges. Safeway created this manual system only after Florida’s Department of Insurance (now Florida’s Department of Financial Services) found, pursuant to a February 2001 audit of Safeway, that Safeway had been routinely and impermissibly charging its customers an additional service charge of $20 twice in twelve-month periods. The Department required Safeway to initiate a systemic plan that would stop future overcharges. The Department did not demand that Safeway review its records to address past overcharges. As a result, Safeway, at the time of the Department’s audit, did not conduct a retroactive audit for past overcharges, nor did it make proactive efforts to issue refunds or credits to customers for past overcharges. Rather, it simply initiated a manual system that attempted to cheek for future potential overcharges where it had impermissibly charged an insured a $20 additional service charge in the previous six months contrary to Florida law.
Under the manual system, an insurance agent facilitated the submission of an application for, and a copy of, a six-month premium finance agreement by the insured to Safeway. These agents were not direct employees of Safeway, but rather, worked with insurance agencies that had full access to Safeway’s application forms and premium finance agreements through the technology of QuickQuote. QuickQuote provided the agents with software that provided direct access to Safeway’s application forms and Safeway’s premium finance agreements. The agent’s incentive was to use the financing supplied by Safeway to complete a transaction for insurance with United Auto. When Sosa filed this action, Safeway had approximately 300 *100 agents in the network submitting these applications and agreements.
The signed application and premium finance agreement reflected the full amount that Safeway charged the insured under a premium finance agreement, including the additional service charge of $20. Each premium finance agreement routinely contained an additional service charge of $20 even if the applicant had already paid the additional service charge in a prior six-month premium finance agreement. The agent then forwarded the application to Safeway.
Upon arrival of the applications and premium finance agreements in Safeway/United Auto’s shared mailroom, a mailroom clerk would check the applications and premium finance agreements in an attempt to determine if the applicant had a previous premium finance agreement with Safeway spanning the previous six months. If the clerk found that the applicant had a previous premium finance agreement with Safeway, and that previous agreement spanned the prior six-month period, the clerk would set aside the application. A second Safeway clerk would then obtain the set-aside applications and check whether Safeway had canceled the applicant’s previous premium finance agreement for nonpayment. If Safeway canceled the previous premium finance agreement for nonpayment, the application and new agreement were returned to the stack for processing with the additional service charge of $20, as that additional charge was permissible under section 627.840(3)(b) due to the insured’s nonpayment. If Safeway had not canceled the previous premium finance agreement for nonpayment, Safeway would process the application and new premium finance agreement through its computer software, known as UNICORP, with a directive to waive the additional service charge of $20 by way of a credit to the balance owed to Safeway. Safeway assessed this credit by having a Safeway employee punch code “4” into the UNICORP system upon processing the application and new premium finance agreement. Thereafter, Safeway sent a letter to the applicant that indicated the applicant’s new remaining balance after the $20 reduction.
Safeway admitted that the manual process and the large quantity of applications resulted in overcharges. Specifically, Safeway failed to assess credits due and, in fact, after Sosa filed this action in 2003, Safeway conducted its own audit retroactive to 1998, which revealed that it had impermissibly overcharged approximately 8000 people a $20 additional service charge twice in a twelve-month period. In an attempt to retroactively address some impermissible overcharges, Safeway issued, by way of a mailing in a white company envelope, 4000 $20-refund checks. For the remaining 4000 customers, Safeway attempted to utilize a credit by way of a waiver on the customer’s renewed premium finance agreement. At the time the trial court considered this case, approximately 1300 of the insureds had not cashed their $20-refund checks.
It was not until Sosa filed this action that Safeway modified the UNICORP system. It installed software that enabled UNICORP to automatically verify the names and addresses of premium finance agreement applicants and, without human intervention, credit an applicant’s balance by $20 if the applicant had a premium finance agreement with Safeway in the previous six months. This process was automated and eliminated the need for the manual entries to enable the $20 credit.
Although an attempt was made to credit Sosa’s third premium finance agreement before he filed this cause of action, Safeway sent an additional $20-refund check to *101 him, which was not received until after this action was filed. At the time the trial court rendered the appealed order, Sosa had not cashed his refund check, and it had been returned to Safeway’s counsel. Sosa initiated this cause of action in December 2003, after he entered into the third premium finance agreement with Safeway. Sosa initiated this action after he discovered that his first monthly installment payment for the third premium finance agreement with Safeway was inexplicably high in price. Concerned with the reason for the high price, Sosa consulted his personal attorney. After reviewing Sosa’s three premium finance agreements with Safeway, Sosa’s personal attorney was able to decipher that Safeway had overcharged Sosa contrary to Florida law by charging him an additional service charge of $20 twice in a twelve-month period.
To rectify this wrong, and to provide relief to others also overcharged by Safeway, Sosa initiated as class representative a class action against Safeway for its illegal overcharge of multiple service charges in a twelve-month period. Sosa based his complaint on the overcharges resulting from his first and second premium finance agreements with Safeway. He did not include in his complaint his third premium finance agreement with Safeway. He alleged that Safeway’s imposition of an additional service charge twice in a twelvemonth period violated section 627.840(3)(b), Florida Statutes (2003), and that, due to this violation, he and the putative class members were entitled to the return of the premium finance charges assessed against them by Safeway plus “twice the entire amount of the premium finance charge so paid.” § 627.835, Fla. Stat. (2003).
After filing his complaint, Sosa moved for class certification. In Sosa’s motion, he contended that class certification was proper because the factual and legal issues presented were common to all class members. Sosa contended that his proposed class satisfied the requirements for class certification as provided by Florida Rule of Civil Procedure 1.220(a) because: (1) the class Sosa sought to represent was so numerous that joinder of all members was impracticable (numerosity); (2) Sosa’s claim raised questions of law or fact common to the questions of law or fact raised by the claims of each member of the class (commonality); (3) Sosa’s claim was typical of the class members’ claims (typicality); and (4) Sosa could fairly and adequately protect the interests of the class (adequacy). In addition to the requirements of rule 1.220(a), Sosa alleged that he fulfilled the requirements under rule 1.220(b)(3). He contended that the common questions of law and fact predominated over issues affecting only individual members, and that class treatment is a superior method for adjudication of the matter at issue.
The trial court conducted a hearing on Sosa’s motion for class certification. During the hearing, the trial court considered depositions, documents, affidavits, and discovery. The trial court found that Sosa had standing because he may have endured a temporary conversion of funds due to Safeway unlawfully charging him the illegal additional service charge on the second premium finance agreement, which presented a live controversy with a re-dressable injury suitable for adjudication. The trial court also stated that whether the “knowingly” requirement in section 627.835 was fulfilled was a matter to be determined at trial and, hence, not a reason to deny class certification. After holding that Sosa’s claim satisfied rule 1.220’s class certification requirements, the trial court granted Sosa’s motion for class certification.
*102 The Third District reversed the certification order, holding that “Sosa d[id] not state a cause of action for which a class action is appropriate.” Sosa, 15 So.3d at 11. The foundation of the Third District’s holding was a determination that (1) Sosa failed to establish rule 1.220(a)’s commonality requirement, and (2) Sosa’s individual questions of law and fact predominated over the class claims. See id. at 10-11. The Third District held that “there would be different circumstances for each individual member of the class which would serve as the bases for and as defenses to the additional premiums charged such that the class action requirement of commonality cannot be met.” Id. at 11. The court provided examples of different circumstances, stating:
These different facts leading to the additional premiums charged include situations where an insured changed his or her name or his or her address from one six-month premium application to the next, leading Safeway to treat the applications as though they were from different individuals, or the company generated more than one bill to the same address in a twelve-month period or committed other mistakes, unintentionally, in the processing of an application.

Id,.

The Third District then held that the individual claims of Sosa and of each class member predominated over any common allegations of an overcharge and negated a class action. See id. According to the Third District, to prove the overcharges, the trial court would need to preliminarily and individually address each individual member’s claims, as Safeway could have a different explanation and defense to an alleged knowing violation of section 627.840 for each individual class member. See id.
The Third District’s ruling also addressed section 627.835’s “knowingly” requirement. See id. The court explained that to act “knowingly” requires an intentional or willful act. See id. Therefore, Sosa, to meet rule 1.220(a)’s requirements, was required to allege facts that implicated Safeway’s specific intent to overcharge not only Sosa, but each class member on an individual basis. See id. Sosa and the individual class members failed to establish a knowing violation of sections 627.840 and 627.835, and, therefore, the Third District concluded that the trial court erred in granting class certification and reversed the trial court’s order. See id.
Sosa thereafter petitioned this Court for discretionary review. We granted review on the basis of express and direct conflict jurisdiction, as provided in article V, section 3(b)(3) of the Florida Constitution.
ANALYSIS

The Third District Applied the Wrong Standard of Review

Because this is a pure question of law, this Court’s standard of review is de novo. See Bosem v. Musa Holdings, Inc., 46 So.3d 42, 44 (Fla.2010) (citing So. Baptist Hosp. of Fla., Inc. v. Welker, 908 So.2d 317, 319 (Fla.2005), and D’Angelo v. Fitzmaurice, 863 So.2d 311, 314 (Fla.2003)); see, e.g., Fayad v. Clarendon Nat’l Ins. Co., 899 So.2d 1082, 1085 (Fla.2005) (applying the de novo standard of review in an assessment of whether Florida’s Third District Court of Appeal reached a correct conclusion of law with regard to the application of an exclusion in an all-risk insurance policy).
This Court has established that an appellate court reviews a trial court’s grant of class certification for an abuse of discretion. See Engle v. Liggett Grp., Inc., 945 So.2d 1246, 1267 (Fla.2006) (citing *103 Bouchard Transp. Co. v. Updegraff, 807 So.2d 768, 771 (Fla. 2d DCA 2002)). That is because “the determination that a case meets the requirements of a class action is a factual finding,” which falls within a trial court’s discretion. Updegraff, 807 So.2d at 771. The discretion of a trial court is to be applied within the structure of rule 1.220. The certification of a class follows the parameters of the class action rule and the theory upon which the rule is based when the court is faced with a multiplicity of individual actions. The class action rule has a real and meaningful position in the administration of justice to address the ever-increasing caseload burden placed upon our trial courts.
In Olen Properties and Glen Cove, the Fourth District, in reviewing a trial court’s certification of a class, employed the abuse of discretion standard of review. See Olen Props., 981 So.2d at 518 (“A trial court’s certification of a class action is reviewed using an abuse of discretion standard.”); Glen Cove, 847 So.2d at 1112 (“Based upon this analysis, we conclude that the trial court abused its discretion in denying appellants’ motion for class certification.”). The other four district courts of appeal, including the Third District, have also applied this standard to a trial court’s order on class certification. See, e.g., Cole v. Echevarria, McCalla, Raymer, Barrett & Frappier, 965 So.2d 1228, 1231 (Fla. 1st DCA 2007); Sonic Auto., Inc. v. Galura, 961 So.2d 961, 964 (Fla. 2d DCA 2007); United Auto. Ins. Co. v. Diagnostics of S. Fla., Inc., 921 So.2d 23, 25 (Fla. 3d DCA 2006); Seminole Cnty. v. Tivoli Orlando Assocs., 920 So.2d 818, 821 (Fla. 5th DCA 2006).
In this matter, the Third District erred by not applying the abuse of discretion standard of review to the trial court’s grant of class certification. See Sosa, 15 So.3d at 9-11. Rather, the Third District conducted a de novo review, as it gave no deference to the trial court’s factual findings and made its own independent determination as to whether Sosa satisfied the requirements of rule 1.220. See id. More specifically, in lieu of pointing to the lack of competent, substantial evidence supporting the trial court’s order, or stating why the trial court’s conclusions of law were erroneous, the Third District made its own findings that Sosa and the putative class members did not satisfy the commonality and predominance elements of rule 1.220, and that Sosa failed to meet section 627.835’s “knowingly” requirement. Then, the Third District held that the trial court erred because it did not find the same. This constituted a de novo review and error. Conversely, the Fourth District in Olen Properties and Glen Cove — by applying the abuse of discretion standard of review to a trial court order on class certification — exemplified the proper methodology to be employed by an appellate court when it reviews a trial court’s order on class certification.

Third District’s Misapplication of Section 627.835’s “Knowingly” Requirement

Section 627.835 penalizes a party if it “knowingly” violates section 627.840(3)(b). See § 627.835. The purpose of section 627.840(3)(b) is to regulate the service charges that a premium finance company may allocate. Section 627.840(3)(b) provides:
(b) The service charge shall be a maximum of $12 per $100 per year plus an additional charge not exceeding $20, which additional charge need not be refunded upon prepayment. Such additional charge may be charged only once in a 12-month period for any one customer unless that customer’s policy has been canceled due to nonpayment with *104 in the immediately preceding 12-month period.
(emphasis added.) In 1995, Florida’s Department of Financial Services, which succeeded Florida’s Department of Insurance (the agency that audited and regulated Safeway), adopted a rule interpreting this section. That rule states:
690-196.038 Limit on Additional $20 Service Charge.
(1) The additional $20 charge referred to in Section 627.840(3)(b), F.S., may be charged only once in a 12-month period for any one customer regardless of the number of premium finance agreements entered into during the 12-month period or the number of policies financed in each finance agreement.
(2) The only exception to the limitation on the additional charge is in instances where a customer’s finance contract has been cancelled due to nonpayment within the immediately preceding 12-month period. In such instances, a company may collect the additional charge again if it refinances the customer’s policy during the same 12-month period
Fla. Admin. Code R. 690-196.038 (formerly Fla. Admin. Code R. 4-196.038).
Section 627.835 states:
Any person, premium finance company, or other legal entity who or which knowingly takes, receives, reserves, or charges a premium finance charge other than that authorized by this part shall thereby forfeit the entire premium finance charge to which such person, premium finance company, or legal entity would otherwise be entitled; and any person who has paid such unlawful finance charge may personally or by her or his legal or personal representative, by suit for recovery thereof, recover from such person, premium finance company, or legal entity twice the entire amount of the premium finance charge so paid.
§ 627.835 (emphasis added). Because the Florida Legislature does not define “knowingly” in chapter 627 of the Florida Statutes, to construe its meaning, we refer to the term’s plain and ordinary meaning, which is discerned from a dictionary. See Sch. Bd. of Palm Beach Cnty. v. Survivors Charter Schs., Inc., 3 So.3d 1220, 1223 (Fla.2009). Black’s Law Dictionary defines “knowing,” of which “knowingly” is the adverb form, as “[h]aving or showing awareness or understanding; well-informed.” Black’s Law Dictionary 950 (9th ed. 2009). Thus, a party violates section 627.835 if it, with awareness and understanding of its actions, or through a common and routine billing practice, overcharges another in contravention of chapter 627 of the Florida Statutes.
The Third District in Sosa erred when it held that the trial court improperly granted Sosa’s motion for class certification on the basis that Sosa failed to demonstrate that Safeway knowingly overcharged him in contravention of sections 627.840 and 627.835. See Sosa, 15 So.3d at 11. The Third District erred because whether Safeway “knowingly” overcharged Sosa is a question of fact for a jury, and, therefore, Sosa was not required to prove that element in his pretrial motion for class certification. See Lynch v. Brown, 489 So.2d 65, 66-67 (Fla. 1st DCA 1986). When it determined that Sosa could not serve as class representative because he failed to demonstrate that Safeway “knowingly” overcharged him, the Third District improperly conflated rule 1.220’s class certification requirements with a question for the trier of fact. Rather, at issue during Sosa’s motion for class certification was whether Sosa and the putative class members, based on the parties’ arguments, pleadings, and discovery, met the require- *105 merits for class certification — an inquiry that restricted the trial court’s examination to the substance of the motion and not the merits of the cause of action or questions of fact for a jury. See Morgan v. Coats, 33 So.3d 59, 63-64 (Fla. 2d DCA 2010) (“Although a trial court will generally be required to conduct an evidentiary hearing to determine whether to certify a class, the trial court’s proper focus is on whether the requirements of rule 1.220 have been met and not on whether the moving party will prevail on the merits.” (quoting City of Tampa v. Addison, 979 So.2d 246, 252 (Fla. 2d DCA 2007))); Policastro v. Stelk, 780 So.2d 989, 991 (Fla. 5th DCA 2001) (“Florida Rule of Civil Procedure 1.220(d)(1) does not contemplate merits discovery prior to class certification; rather, the rule permits discovery ‘concerning whether the claim or defense is maintainable on behalf of a class.’ Until discovery on this limited issue is completed, the trial court may postpone the determination of class certification.”).
Hence, because Sosa did not need to prove the factual issue of whether Safeway “knowingly” overcharged him in the motion for class certification, that matter was not before the trial court. The Third District, therefore, erred in definitively adjudicating it on appeal as part of its review concerning whether the trial court properly granted class certification.

The Trial Court Properly Granted Class Certification

As with district courts of appeal, this Court reviews a trial court’s order on class certification for an abuse of discretion, see Engle, 945 So.2d at 1266, examines a trial court’s factual findings for competent, substantial evidence, and reviews conclusions of law de novo, see Sarasota Citizens for Responsible Gov’t v. City of Sarasota, 48 So.3d 755 (Fla.2010). It also reviews a district court’s application and conclusions of law de novo. See Fayad v. Clarendon Nat’l Ins. Co., 899 So.2d 1082, 1085 (Fla2005).
A trial court must make its determination as to class certification at an early stage in a cause of action, i.e., “certainly before trial, and typically before discovery is completed.” Engle, 945 So.2d at 1266. To certify a class, a trial court must engage in an analysis with regard to whether the class representative and putative class members meet the requirements for class certification promulgated in Florida Rule of Civil Procedure 1.220. See Canal Ins. Co. v. Gibraltar Budget Plan, Inc., 41 So.3d 375, 377 (Fla. 4th DCA 2010). Although rule 1.220 does not demand it, and certainly not all situations require it, a trial court may conduct an evidentiary hearing to evaluate the basis for class certification when there may be questions with regard to whether common issues predominate or whether the proposed class representatives provide a superior method for the fair and efficient adjudication of the controversy. See Barton-Malow Co. v. Bauer, 627 So.2d 1233, 1235 (Fla. 2d DCA 1993) (citing Merrill v. S. Methodist Univ., 806 F.2d 600 (5th Cir. 1986)). A trial court should resolve doubts with regard to certification in favor of certification, especially in the early stages of litigation. See Chase Manhattan Mortg. Corp. v. Porcher, 898 So.2d 153, 156 (Fla. 4th DCA 2005).
When determining whether to certify a class, a trial court should focus on the prerequisites for class certification and not the merits of a cause of action. See Morgan, 33 So.3d at 63-64. However, if consequential to its consideration of whether to certify a class, a trial court may consider evidence on the merits of the case as it applies to the class certification requirements. See Freedom Life Ins. Co. of Am. v. Wallant, 891 So.2d 1109, 1115 (Fla. *106 4th DCA 2004) (“[W]hen deciding whether to certify a class, the trial court’s focus should be on whether the prerequisites for class certification have been established. However ... the court may still consider evidence on the merits of the case ... in determining whether the prerequisites for class certification have been established.” (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974))). Nevertheless, the trial court’s consideration of the merits during class certification review must not result in a determination on the merits or a shift in focus from deciding whether a litigant’s claim is suited for class certification. See id. (holding that the trial court did not err because it considered the merits of the claim only as they applied to a class certification finding and made no determination on the merits).
To obtain class certification, the proponent of class certification carries the burden of pleading and proving the elements required under rule 1.220. See In-PhyNet Contr. Servs. v. Soria, 33 So.3d 766, 771 (Fla. 4th DCA 2010). This includes the four elements of rule 1.220(a). See Canal Ins. Co. v. Gibraltar Budget Plan, Inc., 41 So.3d 375, 377 (Fla. 4th DCA 2010). As delineated by rule 1.220(a), the four elements that a party must satisfy to obtain class certification are:
(1) the members of the class are so numerous that separate joinder of each member is impracticable [numerosity ], (2) the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class [commonality ], (3) the claim or defense of the representative party is typical of the claim or defense of each member of the class [typicality], and (4) the representative party can fairly and adequately protect and represent the interests of each member of the class [adequacy ].
Fla. R. Civ. P. 1.220(a) (emphasis added).
In addition, the proponent of class certification must satisfy one of the three subdivisions of rule 1.220(b). See Fla. R. Civ. P. 1.220(b) (stating that a party may maintain a claim or defense on behalf of a class if it satisfies rule 1.220(a) and 1.220(b)). Rule 1.220(b)(3) states that if sections 1.220(b)(1) and 1.220(b)(2) are not satisfied,[3] then a party may satisfy the requisites of 1.220(b) by fulfilling rule 1.220(b)(3). Rule 1.220(b)(3) provides:
(3)the claim or defense is not maintainable under either subdivision (b)(1) or (b)(2), but the questions of law or fact common to the claim or defense of the *107 representative party and the claim or defense of each member of the class predominate over any question of law or fact affecting only individual members of the class, and class representation is superior to other available methods for the fair and efficient adjudication of the controversy. The conclusions shall be derived from consideration of all relevant facts and circumstances, including (A) the respective interests of each member of the class in individually controlling the prosecution of separate claims or defenses, (B) the nature and extent of any pending litigation to which any member of the class is a party and in which any question of law or fact controverted in the subject action is to be adjudicated, (C) the desirability or undesirability of concentrating the litigation in the forum where the subject action is instituted, and (D) the difficulties likely to be encountered in the management of the claim or defense on behalf of a class.
(Emphasis added.)

i Commonality

Sosa and the putative class members satisfied rule 1.220(a)’s commonality requirement because their claims arose from the same course of conduct and routine billing practice by Safeway and were based on the same legal theory, i.e., Safeway knowingly overcharged Sosa and the class members in contravention of sections 627.840 and 627.835. The Third District risked perverting rule 1.220(a) by misapplying that rule’s commonality requirement. The primary concern in the consideration of commonality is whether the representative’s claim arises from the same practice or course of conduct that gave rise to the remaining claims and whether the claims are based on the same legal theory. See Morgan, 33 So.3d at 64 (citing Powell v. River Ranch Prop. Owners Ass’n, Inc., 522 So.2d 69, 70 (Fla. 2d DCA 1988)).
The threshold of the commonality requirement is not high. See Broin v. Philip Morris Cos., Inc., 641 So.2d 888, 890 (Fla. 3d DCA 1994) (citing Jenkins v. Raymark Indus., Inc., 782 F.2d 468, 473 (5th Cir.1986)). A mere factual difference between class members does not necessarily preclude satisfaction of the commonality requirement. See Morgan, 33 So.3d at 64 (citing Leszczynski v. Allianz Ins., 176 F.R.D. 659, 671 (S.D.Fla.1997)). Individualized damage inquiries will also not preclude class certification. See id. at 65; Ouellette v. Wal-Mart Stores, Inc., 888 So.2d 90, 91 (Fla. 1st DCA 2004); Broin, 641 So.2d at 891 (“Entitlement to different amounts of damages is not fatal to a class action.” (citing Cohen v. Camino Sheridan, Inc., 466 So.2d 1212, 1214 (Fla. 4th DCA 1985))).
Rather, the commonality requirement is aimed at determining whether there is a need for, and benefit derived from, class treatment. See Broin, 641 So.2d at 890 (quoting Jenkins, 782 F.2d at 473). More specifically, the commonality prong only requires that resolution of a class action affect all or a substantial number of the class members, and that the subject of the class action presents a question of common or general interest. See Wallant, 891 So.2d at 1116 (quoting Colonial Penn Ins. Co. v. Magnetic Imaging Sys. I, Ltd., 694 So.2d 852, 853 (Fla. 3d DCA 1997)).
Furthermore, the commonality requirement is satisfied if the common or general interest of the class members is in the object of the action, the result sought, or the general question implicated in the action. See Imperial Towers Condo., Inc. v. Brown, 338 So.2d 1081, 1084 (Fla. 4th DCA 1976) (citing Port Royal, Inc. v. Con *108 boy, 154 So.2d 734, 787 (Fla. 2d DCA 1963)). This core of the commonality requirement is satisfied if the questions linking the class members are substantially related to the resolution of the litigation, even if the individuals are not identically situated. See Morgan, 33 So.3d at 64.
For example, in Morgan, the Second District held that the proposed class representative, a detention deputy for a sheriffs office, as well as a putative class of other detention deputies, satisfied rule 1.220(a)’s commonality requirement. The common claims asserted by the class representative and class members were breach of an oral contract, quantum meruit, and unjust enrichment. The class members predicated their claims on the supposition that the class representative and class members, for a period of approximately two years, were being compensated for an eight-hour work day when they worked 8 1/2 hours.
The trial court found that the class representative and putative class members failed to meet the commonality prong because each class member would base his or her claim on unique facts, with each claim requiring individualized proof. The Second District reversed and concluded that the class representative and putative class members satisfied the commonality requirement because the facts upon which the claims rested arose from the same course of conduct by the sheriffs office and the same legal theory, i.e., the failure to pay the deputies for their entire workday, resulting in claims for breach of contract, quantum meruit, or unjust enrichment. See Morgan, 33 So.3d at 64-65. Although the Second District admitted that there may have been some factual variations among the class members’ claims, such as the duration of employment, those differences did not preclude a finding of commonality. See id. at 65. Instead, those nuanced factual differences went to each individual damage determination, which did not preclude a finding of commonality. See id. The Second District held that class certification was proper because it was clear that each class member predicated a claim upon the same course of conduct by the sheriffs office, and had based his or her claim on the same legal theories. See id.
Likewise, in Broin, the Third District, in reversing a trial court, held that a class representative and putative class members satisfied rule 1.220(a)’s commonality requirement. There, the purported class representative and members were thirty nonsmoking flight attendants employed by various airlines throughout the United States. The class representative and class members claimed that by inhaling secondhand smoke emitted in airplane cabins, they had suffered diseases and medical disorders. According to the claimants, these diseases and disorders justified a cause of action against the defendant, a cigarette company, for damages based on theories of strict tort liability, breach of implied warranty, negligence, fraud, misrepresentation, and conspiracy to commit fraud. The trial court denied the claimants’ motion for class certification based on a finding that the class was too large, the complaint raised issues of first impression, and the class representative raised issues not common to the class members.
The Third District reversed and held that the class representative and putative class members satisfied the commonality requirement because they all engaged in the same conduct by inhaling the smoke; the defendant acted toward each member in a similar manner by manufacturing the cigarettes; and they all sought recovery under a shared a common interest in obtaining relief, i.e., they were all damaged by the cigarette smoke and sought relief for the harm done by it. See Broin, 641 *109 So.2d at 891. The Third District further held that the differences between the class members — such as entitlement to relief under each individual claimant’s applicable statute of limitations and amount of individualized damages owed to each claimant — did not preclude a finding of commonality. See id. These differences did not preclude relief because they were merely factual and did not negate the common, general interest shared by the putative class members. See id.
Also bolstering the Third District’s decision in Broin was the fact that the cigarette company was to assert common, if not identical, defenses to the class members’ claims. See id. This favored class treatment because a class action in such a scenario would aid judicial efficiency and economy, and was warranted to avoid duplicitous litigation of the class members’ common issues. See id.
Additionally, as part of its decision, the Third District reasoned:
It would be a perversion of the spirit behind rule 1.220, and the cases interpreting the rule, to hold, as defendants urge, that plaintiffs’ class action allegations fail because plaintiffs do not present identical claims. If class actions were dependent on class members presenting carbon copy claims, there would be few, if any, instances of class action litigation. It is virtually impossible to design a class whose members have identical claims. Even in the context of a mass disaster, each afflicted member experiences the impact differently, according to the member’s relative location and proximity to the event. Defendants’ proposed holding would nullify the class action rule, a course of conduct we decline to follow.
Id. (emphasis added). Similarly, in the conflict cases of Glen Cove and Olen Properties, the Fourth District correctly complied with the spirit of rule 1.220(a) and its commonality requirement.
In Glen Cove, the class members filed a class action claim against the defendant for failure to maintain the roofs of two buildings, which resulted in the collapse of the roofs and condemnation by the City of Lauderdale Lakes, Florida. 847 So.2d at 1109. The claimants — who were the occupants of the condemned buildings — asserted that, by not maintaining the roofs, the defendants — who owned and leased the condemned buildings — breached a statutory duty, were negligent, and constructively and wrongfully evicted the claimants. See id. The Fourth District held that the claimants satisfied rule 1.220(a)’s commonality requirement because they based their claims on the same legal theories, with those claims arising from the same course of conduct by the defendant, i.e., the failure to maintain the roofs. See id. at 1110.
Likewise, in Olen Properties, the Fourth District upheld a trial court’s grant of class certification, holding that the putative class members satisfied rule 1.220(a)’s commonality requirement. 981 So.2d at 519-20. There, the class representative and putative class members were tenants of the defendants. See id. In the class members’ lease agreement with the defendants, there was a cancellation fee for early termination that equaled one monthly rent payment. See id. at 517. This fee was in the form of liquidated and not actual damages, and did not take into account mitigating factors in the defendants’ recovery for a tenant’s early termination. See id. When the class representative exercised her right to early termination, the defendants attempted to apply that provision, to which the class representative responded by filing a class action claim on behalf of herself and the other tenants. See id.
The trial court granted class certification and the Fourth District affirmed. See *110 id. It held that although the different tenants may have been subject to different fees than that of the class representative, this did not negate commonality, because the tenants still shared a common issue. See id. at 520. More specifically, the Fourth District held that commonality existed because at issue was not whether the types of fees were the same, but rather, whether the defendants’ common practice of assessing liquidated damages as opposed to actual damages to the class members if they terminated their leases early was permissible. See id.
In this case, Sosa and the putative members filed the action against Safeway predicated on a routine course of conduct and common billing practice that Safeway knowingly charged them an additional premium service charge twice in a twelvemonth period in contravention of sections 627.840 and 627.835. See Sosa, 15 So.3d at 9-10. The trial court found that Sosa and the putative class members satisfied the commonality requirement, but the Third District reversed that finding. See id. at 11. The Third District’s reason for the reversal was that “there would be different circumstances for each individual member of the class which would serve as the base for and as defenses to the additional premiums charged.” Id. at 11.
The approach of the Third District was erroneous and conflicted with the proper application of the commonality requirement articulated in Glen Cove and Olen Properties, because it diverted the proper focus from the common and routine course of conduct and billing practice of Safeway overcharging its customers to the mere factual differences surrounding each putative class member’s claim. The Third District did not even consider that Safeway’s common course of conduct and routine billing practice served as the basis for Sosa’s and the putative class members’ claims. Rather, to negate commonality, the Third District focused only on the possibility of mere factual differences in the individual circumstances surrounding each of the putative class members’ claims and the variances in defenses to them. This was error, as the focus of a court in reviewing a finding of the commonality requirement is on whether the class members predicated their claims on the same comm,on course of conduct by the defendant and the same legal theory. See Morgan, 33 So.3d at 64 (“ ‘The ... primary concern in considering the ... commonality of claims should be whether the representative’s claim arises from the same practice or course of conduct that gave rise to the remaining claims and whether the claims are based on the same legal theory.’ ” (emphasis added) (quoting Powell, 522 So.2d at 70)).
The dissent incorrectly asserts that there has been a failure to properly allege commonality. That mistaken supposition serves as the entire basis for the dissent’s assertion that this case is distinguishable from Glen Cove and Olen Properties. Contrary to the dissent’s argument and the holding of the Third District, Sosa clearly satisfied the commonality requirement. The complaint sets forth allegations that Safeway engaged in the common course of conduct and business practice of “assessing and accepting for payment from Mr. Sosa and the Class members an additional charge in excess of twenty dollars ($20) in a 12-month period,” which violated sections 637.835 and 627.840. Complaint at 128. As with the allegations of commonality in Glen Cove and Olen Properties, the allegations of commonality in this case focused on allegations of the common course of conduct of the defendant which allegedly resulted in the same alleged injury to the class representative and the putative class members. Therefore, commonality was clearly satisfied if true be *111 cause the common course of conduct and routine business practice by Safeway and the same legal theory — i.e., Safeway overcharging Sosa and the putative class members in contravention of section 627.840 and 627.835 — served as the basis for all claims. See Morgan, 33 So.3d at 64-65 (stating that mere factual differences and differing individual damage amounts do not preclude satisfaction of rule 1.220(a)’s commonality requirement). A common course of conduct and common business practice is, most assuredly, intentional action, and not some freak occasion or accident.
Further, the dissent and Third District mischaracterize the effect of the “knowingly” element of section 627.835 on the commonality requirement. Whether Safeway in fact engaged in the common course of conduct that resulted in the overcharges as alleged is a fact question reserved for the jury and does not negate the trial court’s determination that, if proven, Safeway’s common business practice would have injured Sosa and the putative class members in the same way. See Horne, 533 So.2d at 264. Therefore, the dissent is incorrect in its assertion that an absence of the “knowingly” element of section 627.835 negates satisfaction of the commonality requirement. This case is allegedly about an intentional common course of conduct and a business practice which, if proven, answers the question. This holding is consistent with the recent decision of the United States Supreme Court in Erica P. John Fund, Inc. v. Halliburton Co., — U.S. -, 131 S.Ct. 2179, 180 L.Ed.2d 24 (2011). That case involved a class action claim for alleged securities fraud, and the lower court held that class certification was not proper because the putative class members did not prove “loss causation” at the class certification stage. See id. at 2183-84. The High Court reversed and held that the putative class members need not prove that fact question at the class certification stage. See id,, at 2187.

ii. Predominance

Sosa and the putative class members satisfy the predominance requirement of rule 1.220(b)(3), as we are presented with a classic case for a class action. The Third District incorrectly held that the class members’ individual claims predominated over the common questions. Rather, the common questions for Sosa and the putative class members pervade the individualized claims because they are based on the common question of whether Safeway engaged in a common course of conduct and business practice that resulted in it overcharging Sosa and the putative class members in violation of Florida law, which is a claim that requires generalized, class-wide proof.
In addition, Sosa sought, and the trial court granted, class certification based on rule 1.220(b)(3). To meet the requirements of rule 1.220(b)(3), the party moving for class certification must establish that the class members’ common questions of law and fact predominate over individual class member claims. See Fla. R. Civ. P. 1.220(b)(3); see also InPhyNet Contracting Servs., Inc. v. Soria, 33 So.3d 766, 771 (Fla. 4th DCA 2010) (citing Rollins, Inc. v. Butland, 951 So.2d 860, 868 (Fla. 2d DCA 2006)). Florida courts have held that common questions of fact predominate when the defendant acts toward the class members in a similar or common way. See Stone v. CompuServe Interactive Servs., Inc., 804 So.2d 383, 388 (Fla. 4th DCA 2001). The predominance and commonality requirements parallel one another, but are not identical. The predominance requirement is more stringent because, to satisfy this requirement, common questions must not only exist but also predominate and pervade. See Soria, 33 *112 So.3d at 771-72; Rollins, Inc., 951 So.2d at 868; Wyeth, Inc. v. Gottlieb, 930 So.2d 635, 639 (Fla. 3d DCA 2006); see also Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1270 (11th Cir.2009) (“Even if the court can identify common questions of law or fact, however, ‘[t]he predominance inquiry ... is “far more demanding” than Rule 23(a)’s commonality requirement.’ ” (alterations in original) (quoting Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1233 (11th Cir.2000))).
The methodology employed by a trial court in determining whether class claims predominate over individual claims involves a proof-based inquiry. More specifically, a class representative establishes predominance if he or she demonstrates a reasonable methodology for generalized proof of class-wide impact. See Soria, 33 So.3d at 771. A class representative accomplishes this if he or she, by proving his or her own individual case, necessarily proves the cases of the other class members. See id. (citing Seminole Cnty. v. Tivoli Orlando Assocs. Ltd., 920 So.2d 818, 824 (Fla. 5th DCA 2006)).
Whether class claims predominate also requires the consideration of how the resolution of the class claims will affect each class member’s underlying cause of action. See id. at 772 (“ ‘To assess the impact of a common question on the class members’ claims, a ... court obviously must examine not only the defendant’s course of conduct towards the class members, but also the class members’ legal rights and duties.’ ” (alteration in original) (quoting Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc., 601 F.3d 1159, 1170 (11th Cir.2010))). If, in examining the claims, a trial court finds that common issues of fact and law impact more substantially the efforts of every class member to prove liability than the individual issues that may arise, then class claims predominate. See id. (citing Sacred Heart Health Sys., Inc., 601 F.3d at 1170). However, it is not the burden of the class representative to illustrate that all questions of fact or law are common. See Sacred Heart Health Sys., Inc., 601 F.3d at 1178. Rather, the class representative must only demonstrate that some questions are common, and that they predominate over individual questions. See id. (citing Klay v. Humana, Inc., 382 F.3d 1241, 1254 (11th Cir.2004)).
In Allapattah Servs., Inc. v. Exxon Corp., 333 F.3d 1248 (11th Cir.2003), the Eleventh Circuit held that a trial court did not abuse its discretion in holding that a class representative and putative class members fulfilled the predominance requirement. See id. at 1260-61. At issue was whether Exxon systematically overcharged 10,000 of its current and former dealers in thirty-five states. See id. at 1251. Exxon sought dealer participation in a pricing system under which retail customers who paid cash for gasoline would pay a few cents less than customers who paid with credit cards. See id. at 1252. In an effort to maximize dealer participation in this pricing system, Exxon began charging dealers a 3% processing fee on sales of gasoline to consumers who paid by credit card, but promised to offset the charge by reducing the wholesale price that each dealer paid for gasoline. See id. Exxon kept this promise for six months. See id. After that six-month period, Exxon, without informing the dealers, stopped providing the offset. See id. The dealers alleged that by removing the offset, Exxon was overcharging them for gasoline. See id. Based on this allegation, the dealers filed a class action against Exxon for breach of contract and fraudulent concealment of a breach of contract. See id.
The trial court certified the dealers’ class action. See id. On appeal to the *113 Eleventh Circuit, Exxon contended that the trial court erred by certifying the class because individual claims predominated over class claims. See id. at 1260. Exxon averred that the trial court erred because each dealer’s claim and Exxon’s affirmative defenses would be resolved on the basis of a single set of facts, which ignored the unique factual and legal issues relevant to the claims of each individual class member. See id.
The Eleventh Circuit, however, upheld the class certification and held that class claims predominated because
all of the dealer agreements were materially similar and Exxon purported to reduce the price of wholesale gas for all dealers.... Whether it breached that obligation was a question common to the class and the issue of liability was appropriately determined on a class-wide basis.
Id. at 1261.
The Eleventh Circuit held further that the individual issues raised by the affirmative defenses of Exxon pertained primarily to the determination of damages and not liability. See id. This factor did not negate predominance because the court held that the presence of individualized damage issues did not prevent a finding that the common issues in the case predominated. See id.
In this case, Sosa and the putative class members satisfied rule 1.220(b)(3)’s predominance requirement because the common class questions for Sosa and the putative class members require generalized proof and not individual inquiries or mini-trials. To resolve whether Safeway overcharged Sosa and the putative class members in contravention of sections 627.840 and 627.835, the trial court need only determine whether Safeway was aware of, and understood that, its common course of conduct and routine business billing practice would result in an overcharge to the class members. Such inquiry applies equally to Sosa and all putative class members, as each of these claims emanates from Safeway’s common course of conduct and routine business practice that resulted in the overcharges.
Further bolstering the predominance of the class claims here is that any minor variance in factual circumstances would be with regard to the issue of damages and not liability, which does not preclude class certification. Also, any defense by Safeway would involve a defense common to all class members, i.e., that it was not aware, nor did it understand, that its conduct would result in an overcharge to all class members.
In addition, any variance in damage recovery between the class members is calculable by using a systematic formula, strengthening the predominance of the class claims. More specifically, although the damage assessment for each class member may vary — as each class member’s claim might involve a different number of premium finance agreements, varying amounts of premium finance charges, and differing credits and refunds obtained from Safeway — each unique damage calculation may be found upon Safeway crediting to each class member the amount of premium finance charges they paid plus twice the amount the class member paid and then subtracting that amount by any amount that has been credited or refunded. See § 627.835, Fla. Stat. This lack of complexity in the damage assessment for Sosa and the putative class members supports the trial court’s finding of predominance and negates the validity of the Third District’s ruling to the contrary.
This determination is in accord in with the principles of class-action litigation, because, as stated in the dissent in Sosa:
*114 Rather than have an unmanageable number of plaintiffs filing individual $20 lawsuits, this class action empowers the little guy and gives him leverage to fight an otherwise insurmountable foe. If plaintiff prevails, the big guy no longer lifts $20 from unsuspecting customers’ pockets, the plaintiffs are made whole, and justice can reign supreme.
Sosa, 15 So.3d at 17 (Gersten, C.J., dissenting).

Hi Numerosity

Sosa and the putative class members satisfied rule 1.220(a)’s numerosity requirement because the members of the proposed class were so numerous as to make joinder impractical. See Fla. R. Civ. P. 1.220(a). No specific number and no precise count are needed to sustain the numerosity requirement. See Toledo v. Hillsborough Cnty. Hosp. Auth., 747 So.2d 958, 961 (Fla. 2d DCA 1999); Pottinger v. City of Miami, 720 F.Supp. 955, 958 (S.D.Fla.1989). Rather, class certification is proper if the class representative does not base the projected class size on mere speculation. See Toledo, 747 So.2d at 961 (“It is well-settled that, while a plaintiff is not required to plead the exact number of persons included in a proposed class, a plaintiff is precluded from relying on speculation as to class size.”).
In this case, Sosa asserted a projected class of at least several hundred, if not thousands, of aggrieved class members. This assuredly satisfies the numerosity requirement. See, e.g., Union Am. Ins. Co. v. Rodriguez, 696 So.2d 1248, 1249 (Fla. 3d DCA 1997) (concluding numerosity has been established where the trial court found that the class will be in excess of 20,000 people); Broin, 641 So.2d at 889 (concluding numerosity prong was met because separate joinder of the members would be impractical because there were over 60,000 people in the class); Maner Props., Inc. v. Siksay, 489 So.2d 842, 844 (Fla. 4th DCA 1986) (determining numer-osity requirement was satisfied because evidence that there were potentially over 350 plaintiffs in class was sufficient to support the trial court’s determination that plaintiff class was so numerous that separate joinder would be impractical).
Sosa also did not base the class number on mere speculation, as the class included all persons in Florida who financed insurance premiums with Safeway and to whom Safeway overcharged an additional service charge of $20 in a twelve-month period. See Sosa, 15 So.3d at 16 (Gersten, C.J., dissenting). Therefore, given the geographical and chronological span of the class, numerosity was clearly established.

iv. Typicality

Class certification was proper because Sosa and the putative class members satisfied rule 1.220(a)’s typicality requirement. The key inquiry for a trial court when it determines whether a proposed class satisfies the typicality requirement is whether the class representative possesses the same legal interest and has endured the same legal injury as the class members. See Morgan, 33 So.3d at 65 (citing Clausnitzer v. Fed. Express Corp., 248 F.R.D. 647, 656 (S.D.Fla.2008)). The test for typicality is not demanding and focuses generally on the similarities between the class representative and the putative class members. See id. (citing Basco v. Wal-Mart Stores, Inc., 216 F.Supp.2d 592, 599 (E.D.La.2002)). Mere factual differences between the class representative’s claims and the claims of the class members will not defeat typicality. See Glen Cove, 847 So.2d at 1111. Rather, the typicality requirement is satisfied when there is a strong similarity in the legal theories upon which those claims are based and when the claims of the class representative and class *115 members are not antagonistic to one another. See Morgan, 33 So.3d at 65 (“ ‘The typicality requirement may be satisfied despite substantial factual differences ... when there is a strong similarity of legal theories.’ ” (quoting Clausnitzer, 248 F.R.D. at 656)).
For example, in Morgan, 33 So.3d at 65, the Second District held that the class representative’s claims were typical to those of the class members. There, the class representative alleged that he suffered the same injury as the class members. See id. He also based his claims on the same legal theories as those in the class. See id. There were, however, factual differences between the class representative and the class members regarding the extent of injury and perceived damage recovery. See id. The Second District held that the class representative satisfied the typicality prong by illustrating that he possessed the same legal interest and had suffered the same type of legal injury as the other class members. See id. It also held that although the extent of the class representative’s injury — i.e., damages— might vary from that of the other class members, this did not serve as a bar to a finding of typicality. See id.
In this case, the claims of Sosa and the putative class members are based on the same legal theory — a violation of sections 627.840 and 627.835 — that arose from the same course of conduct that caused a similar injury — Safeway overcharging Sosa and the putative class members an additional service charge of $20 twice in a twelve-month period. The fact that Sosa’s and the putative class members’ damage recovery might differ because Sosa received a $20 credit on his third premium finance agreement is a mere factual difference as to the extent of his injury and damage recovery, which does not preclude a finding of typicality. Accordingly, class certification was proper and the Third District erred in concluding that this element of rule 1.220(a) had not been established.

v. Adequacy

Sosa fulfilled rule 1.220(a)’s adequacy requirement. To grant class certification, a trial court must determine that the class representative satisfies the adequacy requirement of rule 1.220(a), i.e., it must find that “the representative party can fairly and adequately protect and represent the interests of each member of the class.” Fla. R. Civ. P. 1.220(a)(4). This inquiry serves to uncover conflicts of interest between the presumptive class representative and the class he or she seeks to represent. See Terry L. Braun, P.A. v. Campbell, 827 So.2d 261, 268 (Fla. 5th DCA 2002). A trial court’s inquiry concerning whether the adequacy requirement is satisfied contains two prongs. See City of Tampa v. Addison, 979 So.2d 246, 255 (Fla. 2d DCA 2007). The first prong concerns the qualifications, experience, and ability of class counsel to conduct the litigation. See id. The second prong pertains to whether the class representative’s interests are antagonistic to the interests of the class members. See id.
In this case, Sosa was willing and able to take an active role as class representative and advocate on behalf of all class members. His interests were not antagonistic to those of the rest of the class. On the contrary, they paralleled the interests of the class members, as he and the class members sought redress from Safeway based on alleged violations of sections 627.835 and 627.840. Further, the trial court determined that Sosa’s legal team was competent and experienced, giving them the ability to advocate effectively on behalf of Sosa and the putative class members. Accordingly, Sosa fulfilled the adequacy requirement of rule 1.220(a).

*116
vi. Superiority

Sosa and the putative class members satisfied rule 1.220(b)(3)’s superiority requirement because a class action is the most manageable and efficient way to resolve the individual claims of each class member. See Fla. R. Civ. P. 1.220(b)(3) (requiring that “class representation is superior to other available methods for the fair and efficient adjudication of the controversy”). Three factors for courts to consider when deciding whether a class action is the superior method of adjudicating a controversy are (1) whether a class action would provide the class members with the only economically viable remedy; (2) whether there is a likelihood that the individual claims are large enough to justify the expense of separate litigation; and (3) whether a class action cause of action is manageable. See Morgan, 33 So.3d at 66 (citing Liggett Grp. v. Engle, 853 So.2d 434, 445-46 (Fla. 3d DCA 2003), approved in part and quashed in part on other grounds, 945 So.2d 1246 (Fla.2006)). The superiority factors weigh in favor of class certification. See id.
In this case, Sosa’s cause of action is suitable for class certification because it is the superior form of adjudication for this controversy. There are potentially thousands of prospective class members and their small individual economic claims involving a $20 overcharge are not so large as to economically justify each individual filing a separate action. Allowing Sosa and the putative class members to proceed with this class action is the most economically feasible remedy given the potential individual damage recovery for each class member. Furthermore, because of the large number of potential class members who based their claims on the same common course of conduct by Safeway, a class action would be a more manageable and more efficient use of judicial resources than individual claims. Therefore, Sosa and the putative class members satisfy rule 1.220(b)(3)’s superiority requirement.

Sosa Had Legal Standing to Serve as Class Representative

A threshold inquiry in a motion for class certification is whether the class representative has standing to represent the putative class members. See Stone v. CompuServe Interactive Servs., 804 So.2d 383, 388 (Fla. 4th DCA 2001) (citing W.S. Badcock Corp. v. Webb, 699 So.2d 859, 860-61 (Fla. 5th DCA 1997), and Taran v. Blue Cross Blue Shield of Fla., Inc., 685 So.2d 1004, 1006 (Fla. 3d DCA 1997)). A trial court’s decision as to whether a party has satisfied the standing requirement is reviewed de novo. See Found. for the Developmentally Disabled, Inc. v. Step by Step Early Childhood Educ. & Therapy Ctr., Inc., 29 So.3d 1221, 1223 (Fla. 2d DCA 2010) (“We note that a trial court’s decision regarding a party’s standing to file suit is reviewed using the de novo standard of review.” (citing Fox v. Prof'l Wrecker Operators of Fla., Inc., 801 So.2d 175, 178 (Fla. 5th DCA 2001))).
To satisfy the standing requirement for a class action claim, the class representative must illustrate that a case or controversy exists between him or her and the defendant, and that this case or controversy will continue throughout the existence of the litigation. See Olen Props., 981 So.2d at 517 (citing Ferreiro v. Phila. Indem. Ins. Co., 928 So.2d 374, 377 (Fla. 3d DCA 2006)). In deciding if a party has alleged a justiciable case or controversy, “the trial court is not required to determine the merits of the case.” Id. at 518; see also Peace River/Manasota Reg’l Water Supply Auth. v. IMC Phosphates Co., 18 So.3d 1079, 1084 (Fla. 2d DCA 2009) (“[T]he proof required is proof of the elements of standing, not proof directed to the elements of the case or to the ultimate *117 merits of the case.”). Rather, the trial court must determine if the class representative has alleged sufficient facts to establish a legal issue for the court’s resolution. See Olen Props., 981 So.2d at 517.
A case or controversy exists if a party alleges an actual or legal injury. See id. (citing Linda R.S. v. Richard D., 410 U.S. 614, 617, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973)). An actual injury includes an economic injury for which the relief sought will grant redress. See Peregood v. Cosmides, 663 So.2d 665, 668 (Fla. 5th DCA 1995) (stating that an actual injury may be economic in nature). That injury must be distinct and palpable, not abstract or hypothetical. See id. (citing Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), and Allen v. Wright, 468 U.S. 737, 741, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)).
In this case, Sosa has suffered uneconomic injury, fulfilling the actual injury requirement of standing. This is despite Safeway having credited Sosa $20 on his third premium finance agreement, which equaled the amount Safeway overcharged Sosa on his second premium finance agreement. Rather, Sosa’s economic injury for which he may pursue redress is in the form of a damage recovery of the entire premium finance charge plus twice the amount of the premium finance charge assessed by Safeway — which is the damage award provided under section 627.835.
More specifically, section 627.840 permits a premium finance company to charge an individual a maximum additional service charge of $20 in a twelve month period. Section 627.835 provides that any person who unlawfully charges a premium finance charge owes the person to whom they assessed the overcharge the entire premium finance charged plus twice the entire amount of the premium charge so paid. In a twelve month period, Safeway charged Sosa an additional service charge of $20 twice, i.e., it assessed the $20 additional service charge to Sosa in each of his first two premium finance agreements whose individual duration was for six months. It is alleged that by doing so, Safeway violated section 627.840. If Sosa successfully proves this violation at trial, Safeway will owe Sosa and the members of the class the damage award allocated under section 627.835. This is an economic injury for which Sosa and other class members may seek redress.

The Trial Court Conducted a Proper Rule 1.220 Analysis

In undertaking the initial analysis, a trial court may look beyond the pleadings and, without resolving disputed issues, determine how disputed issues might be addressed on a classwide basis. See Earnest v. Amoco Oil Co., 859 So.2d 1255, 1258 (Fla. 1st DCA 2003) (citing Stone, 804 So.2d at 387). The initial analysis is needed for class certification because the granting of class certification may expand the dimensions of the action. See Baptist Hosp. of Miami, Inc. v. Demario, 661 So.2d 319, 321 (Fla. 3d DCA 1995); see also Chase Manhattan Mortg. Corp. v. Porcher, 898 So.2d 153, 156 (Fla. 4th DCA 2005). By conducting a rule 1.220 analysis, a trial court ensures that the requirements for class certification under rule 1.220 have been satisfied, and that the certification has a sound basis in fact and is not predicated on mere supposition. See Demario, 661 So.2d at 321. This analysis is also needed to assure that the decision on whether or not to certify a class is made carefully and on the basis of sufficient information. See id. (quoting Barton-Malow Co., 627 So.2d at 1235).
Furthermore, rulé 1.220(d)(1) demands that the trial court, after it has considered the pleadings and conducted a *118 hearing, render an order on class certification as soon as practicable, with that order separately detailing the trial court’s factual findings and conclusions of law, and, if proceeding with a class, specifically designating the applicable section of rule 1.220(b). See Porcher, 898 So.2d at 156. That rule also requires that the trial court’s order articulate the factual findings that support the trial court’s conclusions of law. See Grosso v. Fid. Nat’l Title Ins. Co., 983 So.2d 1165, 1172 (Fla. 3d DCA 2008); Fla. Health Scis. Ctr., Inc. v. Elsenheimer, 952 So.2d 575, 581 (Fla. 2d DCA 2007) (“Rule 1.220(d)(1) requires the trial court’s order to ‘separately state the findings of fact and conclusions of law upon which the determination is based.’ ”); City of Tampa v. McAfee, 896 So.2d 943, 946 (Fla. 2d DCA 2005) (“This court has made it clear that it will not accept conclusory findings in an order granting class certification.”).
In this case, the trial court conducted a rigorous analysis, and determined facts which made class certification proper. Before rendering the certification order, the trial court evaluated written arguments for and against class certification. It also considered affidavits, deposition testimony, as well as all discovery, documentation, and court filings that constituted the entire case file. Additionally, the trial court held a hearing where it entertained argument from both parties.
During that hearing, the trial court evaluated whether Sosa had standing and, if so, whether he and the putative class members satisfied the requirements of rule 1.220. It then issued an oral pronouncement during the hearing that Sosa had standing, and that he and the putative class members satisfied the requirements of rule 1.220. It memorialized that pronouncement in writing by way of a written order that outlined why Sosa had standing and how Sosa and the putative class members satisfied the requirements of rule 1.220. That order complied with rule 1.220(d) because it specifically detailed the trial court’s findings of fact and conclusions of law as to why class certification was proper, while noting what section of rule 1.220(b) was applicable to its decision. Although brief, these findings were not conclusory because they demonstrated why — both factually and legally — the trial court held in favor of Sosa and the putative class members.
Therefore, the trial court’s order reflects a rigorous analysis performed by the trial court and meets rule 1.220(d)’s procedural requirement.
CONCLUSION
The Third District in Sosa erred by not applying the abuse of discretion standard of review to the trial court’s order granting class certification, and by conflating its class certification review by incorrectly addressing section 627.835’s “knowingly” requirement during its examination of whether Sosa satisfied rule 1.220’s requirements and failing to consider the common course of conduct and routine billing practice that produce an alleged statutory violation. The Third District also erred because Sosa and the putative class members satisfied rule 1.220’s requirements for class certification, with Sosa having legal standing to serve as class representative. We, therefore, quash the decision in Sosa, approve the decisions in Glen Cove and Olen Properties, and remand this case for further proceedings consistent with this opinion.
It is so ordered.
PARIENTE, LABARGA, and PERRY, JJ., concur.
*119 CANADY, C.J., dissents with an opinion, in which QUINCE and POLSTON, JJ., concur.

. Section 627.827, Florida Statutes (2010), defines a "premium finance agreement” as:
a promissory note or other written agreement by which an insured promises or agrees to pay to, or to the order of, a premium finance company the amount advanced or to be advanced under the agreement to an insurer or to an insurance agent, in payment of premiums on an insurance contract, together with a service charge as authorized and limited by law.

. Throughout the trial court proceedings, the parties argued over whether the reassessment of the $20 to Sosa’s account was a "waiver” or "credit.” Although Safeway labeled it a waiver in its computer operating system, this is semantics. As found by the trial court, the result of the reallocation of funds is the same regardless of what it is labeled, i.e., Sosa was credited $20 on his balance for his third premium finance agreement with Safeway because, in contravention of section 627.840, Safeway impermissibly charged him an additional service charge of $20 twice in a twelve month period by assessing that charge on Sosa’s first and second premium finance agreements.

. Florida Rule of Civil Procedure 1.220(b)(1)-(2) provides:
A claim or defense may be maintained on behalf of a class if the court concludes that the prerequisites of subdivision (a) are satisfied, and that:
(1) the prosecution of separate claims or defenses by or against individual members of the class would create a risk of either:
(A) inconsistent or varying adjudications concerning individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or
(B) adjudications concerning individual members of the class which would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the adjudications, or substantially impair or impede the ability of other members of the class who are not parties to the adjudications to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class as a whole appropriate;....