SHEPHERD, J.
This is an appeal from a non-final order denying a motion to certify a class of all persons and entities who own property on any one of the six islands that dot Biscayne Bay between the City of Miami mainland and the City of Miami Beach, known as the Venetian Islands,[1] who since 2005 have paid a $24.00 annual administrative fee per registered vehicle for the privi *1081 lege of traversing the toll plaza at the City of Miami mainland access point to the islands through an open electronically controlled toll booth lane rather than one of the five manned toll booth lanes. The annual fee approximates the administrative cost incurred by toll booth owner and operator, Miami-Dade County, in offering the service to property owners in the Venetian Islands.[2]
Barbara Leibell, the named plaintiff in this case, is the owner of a home on Rivo Alto Island in the Venetian Islands chain. She claims the fee violates an eighty-five-year-old deed restriction which affords all owners of property on the islands “the right and privilege to use Venetian Way [now the Venetian Causeway] free from toll charges.” We, of course, take no position in this opinion concerning the validity of her claim. We do, however, hold she has not carried her burden of proving her claim can be prosecuted as a class action. A brief summary of the facts of this ease is necessary to explain our decision.
FACTS
The Venetian Islands are the product of one of South Florida’s earliest dredge and fill operations. Stretching between the City of Miami mainland and the barrier island on which the City of Miami Beach is located, the islands are connected by a road and series of bridges, commonly known as the Venetian Causeway, running from the City of Miami mainland to the west, and the City of Miami Beach to the east. The Venetian Causeway, including its bridges, is owned today by Miami-Dade County.
For a period prior to 2005, one of the bridges, the historic Venetian Islands Bridge, which affords island residents direct access to the mainland, was closed for repairs. During that period, two modest-sized voluntary homeowners’ associations on the islands, whose members felt a toll booth plaza at this access point to the islands would enable greater safety and security for island residents and create a pool of money for the beautification and upkeep of the Venetian Causeway, proposed to the County a toll booth plaza be erected at that location. The County Commission met and approved the proposal, a toll booth plaza was erected, and the challenged administrative fee for a service program was established.
Although participation in the program is voluntary, nearly all of the 1400 property owners on the six islands avail themselves of the service. The program permits property owners unlimited trips through the toll plaza at the mainland City of Miami access point. All non-property owners who choose to enter or exit from the islands at the mainland City of Miami access point must pass through one of the other five toll booths at the plaza and pay a $1.50 toll or, if a frequent user of the Venetian Causeway, avail himself of the annual pass purchase program at a cost of $90.00 per year.
Barbara Leibell has participated in the owners’ program since it commenced in 2005. However, she has made each payment under protest. She argues that the annual charge is an exaction in violation of a deed restriction in a 1927 warranty deed, conveying title to what is now the Venetian Causeway from Bay Biscayne *1082 Improvement Company to the Bay Biscayne Bridge Company, through which the County holds its title to the Causeway, which provides “That the Bay Biscayne Bridge Company, its successors and assigns, shall not at any time exact or attempt to exact of any owner of property on [the Venetian Islands] any toll charge for the use by such owner of the Venetian Way.”[3] There is no record evidence of any other property owner paying the annual fee under protest.[4] Nor is there any evidence that a property owner who elected not to participate in the program has been refused ingress or egress to the Venetian Islands at the toll booth plaza for failure to pay a toll to the County. In fact, the County admits the covenant prevents it from charging a toll to Venetian Islands property owners for the right of ingress or egress to the islands through the Venetian Causeway toll booth plaza.
These facts are not in serious dispute. We find the court acted well within its authority in denying class certification.
DISCUSSION
Parties seeking class certification have the burden of pleading and proving each element of Florida Rule of Civil Procedure 1.220(a) and one of the three requirements of Florida Rule of Civil Procedure 1.220(b). Terry L. Braun, P.A. v. Campbell, 827 So.2d 261, 265 (Fla. 5th DCA 2002). The trial court found that Ms. Leibell failed to satisfy the elements necessary to establish class treatment of her claims under subsection (a) of the rule. We agree. The trial court also found that Ms. Leibell’s claims failed to satisfy the class certification requirements under subsection (b) of the rule. We find it unnecessary to consider that analysis.
FLORIDA RULE OF CIVIL PROCEDURE 1.220(a)
There are four prerequisites to establishing a class action under Florida Rule of Civil Procedure 1.220(a):
(1) the members of the class are so numerous that separate joinder of each member is impracticable [numerosity],
(2) the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class [commonality],
(3) the claim or defense of the represen *1083 tative party is typical of the claim or defense of each member of the class [typicality], and (4) the representative party can fairly and adequately protect and represent the interests of each member of the class [adequacy].
Fla. R. Civ. P. 1.220(a). The first two of these requirements — numerosity and commonality — focus on the absent or “represented” class. The latter two requirements — typicality and adequacy — address the qualifications of the class representative. The trial court found the proposed class action in this case failed to pass muster on either side of this divide. We find the trial court did not abuse its discretion in so ruling.
I. ELEMENTS PERTAINING TO THE ABSENT OR “REPRESENTED” CLASS
There are two elements pertinent to this focus — numerosity and commonality. We treat each of these elements in turn.
A. NUMEROSITY
To satisfy this requirement, a plaintiff must demonstrate that the class is so numerous that separate joinder of each member is impracticable. See Fla. R. Civ. P. 1.220(a)(1). Satisfaction of this prerequisite is not just a test of numbers. Robidoux v. Celani, 987 F.2d 931, 935 (2d. Cir.1993).[5] Rather, as the provision itself suggests, it is a practicability requirement of which class size is but one inherent part.[6] Thus, a proposed class, even a moderately large one, as proposed here, which appears to the naked eye to be “adequately defined and clearly ascertainable,” see, e.g., DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir.1970), still will fail if it is overbroad. See Rink v. Cheminova, Inc., 203 F.R.D. 648, 659 (M.D.Fla.2001).
The proposed class in this case is overbroad. Out of 1400 persons who had participated in the Venetian Islands owners’ program by the time of the hearing on the motion for certification, there existed evidence that only one of them, Ms. Lei-bell, had paid the program fee under protest. The evidence was that many more, represented by two homeowners’ associations, do not wish to seek the remedies sought by Ms. Leibell in this lawsuit. It is as likely as not — indeed, probably more likely than not, based upon the record before us — that Ms. Leibell’s neighbors do not object either to the toll booth or the service offered them through the owners’ program. We do not operate in a vacuum. See Demarco v. Edens, 390 F.2d 836, 845 (2d Cir.1968) (“[A] determination of practicability should depend upon all the circumstances surrounding a case.”); see also Gen. Tel. Co. of the NW., Inc. v. Equal Emp’t Opportunity Comm’n, 446 U.S. 318, 329-330, 100 S.Ct. 1698, 64 L.Ed.2d 319 *1084 (1980) (discussing the undesirability of forcing EEOC actions into Federal Rule of Civil Procedure 23). Thus far, Ms. Leibell has proven a class of one. Neither the law nor common sense compels certification in this case based upon numerosity or impracticability of joinder. See Jamerson v. Bd. of Trs. of Univ. of Ala., 662 F.2d 320 (5th Cir.1981) (denying class certification where plaintiff alleging discriminatory refusal of tenure could not name any other persons who had been discriminated against during the time of the suit). The trial court did not abuse its discretion in so ruling.
B. COMMONALITY
The primary concern on this element is “whether the representative’s claim arises from the same practice or course of conduct that gave rise to the remaining claims and whether the claims are based on the same legal theory.” Sosa v. Safeway Premium, Fin. Co., 73 So.3d 91, 107 (Fla.2011) (citing Morgan v. Coats, 33 So.3d 59, 64 (Fla. 2d DCA 2010)); see also Olen Props. Corp. v. Moss, 981 So.2d 515, 520 (Fla. 4th DCA 2008); Terry L. Braun, P.A., 827 So.2d at 267; Powell v. River Ranch Prop. Owners Ass’n, 522 So.2d 69, 70 (Fla. 2d DCA 1988). As has often been said, the threshold of the commonality requirement is not high. Safeway Premium, 73 So.3d at 107; Tire Kingdom, Inc. v. Dishkin, 81 So.3d 437, 447 (Fla. 3d DCA 2011); Miami Auto. Retail v. Baldwin, - So.3d -, -, 2011 WL 2496609 (Fla. 3d DCA 2011). On this element, this case appears to have much in common with Safeway Premium.[7] As explained by our high court, the gravamen of the complaint in Safeway Premium — insufficiently appreciated by this court — was that the origin of the offending practice was the inclusion of an additional $20.00 service charge on the premium financing application forms supplied by Safeway to its agents, knowing full well that such a charge could be extracted from a customer only once in every twelve months. As the Court described it:
The signed application and premium finance agreement reflected the full amount that Safeway charged the insured under a premium finance agreement, including the additional service charge of $20. Each premium finance agreement routinely contained an additional service charge of $20 even if the applicant had already paid the additional service charge in a prior six-month premium finance agreement. The agent then forwarded the application to Safeway.
Safeway Premium, 73 So.3d at 100. It was this common course of conduct, uniformly executed by Safeway as the drafter of the agreement that, according to the High Court, “presented] a question of common or general interest” sufficient to satisfy the relatively low threshold of Florida Rule of Civil Procedure 1.220(a)(2). Safeway Premium, 73 So.3d at 107. Although the payments in the case before us were voluntarily made, we conclude on the facts of this case the threshold of commonality as defined and circumscribed by the Florida Supreme Court has been satisfied. Id. at 110 (“[T]he focus of a court in reviewing a finding of the commonality requirement is on whether the class members predicated their claims on the same course of conduct by the defendant and the same legal theory.”).[8]
*1085 II. ELEMENTS PERTAINING TO THE CLASS REPRESENTATIVE
There are two elements pertinent to this focus — typicality and adequacy. We treat each of these elements in turn.
A. TYPICALITY
Rule 1.220(a)(3) requires the claims of the representative party be typical of the claims of the class. This element focuses on the sufficiency of the named plaintiffs, see Kia Motors Am. Corp. v. Butler, 985 So.2d 1133, 1136 n. 3 (Fla. 3d DCA 2008), and the relationship between their claims and the class’s claims, see State Farm Mut. Auto. Ins. Co. v. Kendrick, 822 So.2d 516, 517 (Fla. 3d DCA 2002).
On this element, it is not sufficient for the plaintiff to have “some claim.” Our adversary system works well only when “[the] system is confident that the ... litigant who does his best for himself also inescapably benefits his fellow class members.” Tire Kingdom, 81 So.3d 437, 450 (citing Degnan, Ronan E., Foreward, Adequacy of Representation in Class Actions, 60 Calif. L. Rev. 705, 716 (1972)). It requires little imagination in this case to envision how success in the eyes of Ms. Leibell might well be seen as defeat of the interests of her island neighbors. If Ms. Leibell were to prevail on a class wide basis in this case, the County would have every right in such a circumstance to provide Ms. Leibell and her neighbors their free access to the City of Miami mainland through one of the arguably less desirable manned toll booths.
B. ADEQUACY
Rule 1.220(a)(4) requires the class representative to demonstrate she “can fairly and adequately protect and represent the interests of each member of the class.” Tire Kingdom, 81 So.3d 437, 451. The difference between this element and the typicality requirement is not crystal clear. Massengill v. Bd. of Educ., Antioch Cmty. High Sck, 88 F.R.D. 181, 184 (N.D.Ill., E.D.1980). However, typicality does not guarantee adequate representation. Two grounds frequently employed to determine adequacy of representation are the skill of the attorney to prosecute the case and the lack of conflict between the interests of the representatives and those of the class they seek to represent. See Tire Kingdom, 81 So.3d 437, 451. In addition, inherent in this rule is “an expectation of a ‘minimal level of interest in the action.’ ” Massengill, 88 F.R.D. at 186 (quoting Sullivan v. Chase Inv. Servs., 79 F.R.D. 246, 258 (N.D.Cal.1978)).
On this element, one would have to be willfully ignorant to not perceive the potential conflict between Ms. Leibell’s interest in this case and that of the purported class. Ms. Leibell failed to carry her burden on this element of the rule.
CONCLUSION
Aggregation of cases requires aggregation of interests. At the class action hearing, Ms. Leibell was unable to offer the *1086 name and address of a single neighbor who shared her interest. See Wechsler v. Ethanol Partners Accredited, 1 Fed. R. Serv.3d 620 (S.D.N.Y.1985) (denying class certification of 80-100 persons where the plaintiff had made no effort to contact any of the persons to see if they wanted to join the action). The trial court did not abuse its discretion in denying Ms. Leibell’s motion for class certification in this case.
Affirmed.

. The islands bear the names Biscayne Island, San Marco Island, San Marino Island, Di Lido Island, Rivo Alto Island, and Belle Isle. Biscayne Island and San Marco Island lie within the City of Miami. The remaining four islands lie within the City of Miami Beach.

. An electronic instrument known as a transponder is required in order to use the electronically controlled toll booth lane. The cost to the County of each transponder is $26.87. Property owners are required to renew the service annually. The County estimates the annual cost to administer the program (including staff costs) to be $23.00 per issued transponder. A property owner may, of course, obtain more than one transponder.

. Ms. Leibell also calls our attention to a second warranty deed recorded December 10, 1936, between the Miami Bridge Company and Biscayne Island Corporation, conveying certain lots on one of the Venetian Islands to Biscayne Island Corporation, providing "all persons acquiring and owning any lot in said subdivision, and to their successors in ownership, to use the street known as Venetian Way, and all persons actually owning lots in said subdivision shall have the right to use all bridge connections along Venetian Way and situated between Miami Beach and the City of Miami, and also such right of approach to said causeway as may be provided by the company without rental or other charge.” This deed does not impose any greater burden on the County as the owner of the Venetian Causeway and the toll booth plaza than does the 1927 warranty deed.

. Ms. Leibell attaches a copy of a letter from Joseph Pardo, dated April 11, 2005, protesting the County’s plan to implement the owners’ program, to her reply brief in this case. The letter was not part of the record before the trial court, and therefore cannot be considered by us on this appeal. Thornber v. City of Ft. Walton Beach, 534 So.2d 754, 755 (Fla. 1st DCA 1988) ("An appellate court will not consider evidence that was not presented to the lower tribunal because the function of an appellate court is to determine whether the lower tribunal committed error based on the issues and evidence before it.”). There also is no testimony concerning whether Mr. Pardo, like Ms. Leibell, participated in and protested the program after it commenced.

. Florida’s class action rule is patterned upon Federal Rule of Civil Procedure 23. We look to federal law for interpretive guidance. See Fla. Dep’t of Agric. v. Citrus Canker Litig., 941 So.2d 461, 464 (Fla. 3d DCA 2006).

. As Newberg puts it:
Courts and commentators have found it easy to slip into the pattern of referring to Rule 23(a)(1) simply as a test of numerosity, because large classes are common, and the Rule 23(a)(1) prerequisite is satisfied in such cases solely on the basis of the number of class members. However, number is only one of several considerations. Apart from class size, factors relevant to the join-der impracticability issue include judicial economy arising from avoidance of a multiplicity of actions, geographic dispersement of class members, size of individual claims, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunc-tive relief which would involve future class members.
1 Herbert B. Newberg, Newberg on Class Actions, § 3:6, at 250-52 (4th ed. 2002).

. We pause to note the trial court did not have the benefit of Safeway Premium at the time it denied Ms. Leibell's motion for class certification.

. The County asserts the fact that all payments were voluntarily made constitutes a complete defense to the certification of a class in this case. See City of Miami v. Keton, 115 *1085 So.2d 547, 551 (Fla.1959) (holding that class of persons who voluntarily paid traffic fines levied by municipal court whose jurisdiction to levy such fines had been repealed were not entitled to recover the amounts paid even where the fines were levied under a mistake of law); Hassen v. Mediaone of Greater Fla., Inc., 751 So.2d 1289 (Fla. 1st DCA 2000) (finding recovery of voluntary payment of late charges by cable subscribers barred even if "the payment may have been made upon a mistaken belief as to the enforceability of the demand, or liability under the law, as long as payment is made with knowledge of the factual circumstances”). To the extent this defense exists, it would be more appropriately considered in a subsection (b) analysis, had one been necessary in this case.