# Third District Court of Appeal

## State of Florida

Opinion filed June 27, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2851
Lower Tribunal No. 14-26236
_____


**Miami-Dade Expressway Authority
and Javier Rodriguez, P.E., etc.,**
Appellants,

vs.

**Tropical Trailer Leasing, L.L.C., et al.,**
Appellees.


An Appeal from a non-final order from the Circuit Court for Miami-Dade County, John W. Thornton, Jr., Judge.

Johnson, Anselmo, Murdoch, Burke, Piper & Hochman and Jonathan H. Railey, Michael R. Piper and Christopher J. Stearns (Fort Lauderdale), for appellants.

Akerman LLP and A. Rodger Traynor, Jr., and Lawrence D. Silverman, for appellees.

Before ROTHENBERG, C.J., and SALTER and LUCK, JJ.

SALTER, J.

Defendants/appellants, Miami-Dade Expressway Authority and Javier Rodriguez, P.E., in his official capacity as Executive Director of Miami-Dade Expressway Authority (collectively, "MDX"), appeal an order granting a motion for class certification by Tropical Trailer Leasing, L.L.C. ("Tropical Trailer"), and eight co-plaintiffs (collectively, the nine plaintiffs are referred to as "Plaintiffs"). We affirm.

I.     Facts; Proceedings in the Circuit Court

The Plaintiffs are in the business of leasing trailers. The trailers are not self-propelled, and the Plaintiffs do not own the tractor trucks needed to transport the trailers. The Plaintiffs lease the trailers to third parties, who in turn hire the owners of tractor trucks to tow the leased trailers. Many times the tractor truck owners hire independent drivers for a particular haul or group of hauls.

Implemented in 2010, MDX uses an electronic transponder system to charge the motor vehicles and drivers on its roads a toll based on the number of axles on the vehicle. If the tractor truck contains a working electronic transponder device (a "SunPass transponder"), the entire toll amount for a five-axle vehicle (three axles for the tractor and two for the trailer) is automatically deducted from the SunPass transponder account of the tractor truck's owner. If the vehicle has no SunPass transponder, then the MDX toll system relies on a video "Toll by Plate" system,

2

capturing an image of the vehicle's rear tag. In such cases, MDX charges the entire per-axle toll to the rear tag's registered owner.

This practice led MDX to charge the Plaintiffs a full five-axle toll. The Plaintiffs alleged that, starting in 2013, some MDX systems had the capability to photograph the front tag belonging to the driver, but MDX made no consistent effort to identify the driver of the motorized vehicle. The Plaintiffs asserted that MDX had no authority to impose a toll on their tractor-towed, non-motorized trailers before a 2012 amendment to the statutory definition of "motor vehicle," and thereafter, no authority to impose a toll on the trailers for the separately-owned and operated tractor trucks pulling the trailers.

The Plaintiffs sued MDX for declaratory, injunctive and monetary relief based on allegations that MDX's toll collection practices, through its video tolling and "Toll by Plate" system, had unlawfully charged the Plaintiffs tolls on occasions where third parties were towing their trailers. The Plaintiffs argued that a trailer owner is not the owner of the "motor vehicle" incurring the toll. The Plaintiffs sought to certify a class of all trailer owners who were charged a toll by MDX because the driver of the motorized tractor truck did not pay the toll incurred by the truck.

The operative Second Amended Class Action Complaint asserted that many of the tractor truck drivers tow the trailers on MDX roads without paying tolls.

3

These drivers allegedly smudge or obscure the tractor plate to avoid MDX detection. Plaintiffs argued that Florida statutes make a driver ultimately responsible for the entire unpaid toll, not the trailer owner. See § 316.1001(2)(c), Fla. Stat. (2017). MDX has been imposing the toll on the trailer tag owners because the trailer tag was the only captured tag. The Plaintiffs have no practical way of identifying the drivers towing their trailers. This makes it impossible for the Plaintiffs to track down the toll violator to compel immediate payment of the toll, or to avoid the toll by providing MDX a timely affidavit with the toll violator's information, as required in section 316.1001(2)(C)1., and 2., Florida Statutes (2017). As a result, the Plaintiffs have been paying most of the violations even though the tolls are unlawful.

The complaint also sought clarification of the trailer owners' liability for tolls after a 2012 statutory amendment. Prior to July 1, 2012, Plaintiffs allege that MDX had no authority to assess tolls against Tropical Trailer's non-self-propelled vehicles. This is based on section 316.110(2)(c), which specifies that the "owner of the motor vehicle involved in the violation is responsible and liable for payment . . . ." The pre-2012 version of section 316.003 defined "motor vehicle" as "(21) Motor vehicle.--Any self-propelled vehicle not operated upon rails or guideway, but not including any bicycle, motorized scooter, electric personal assistive

4

mobility device, or moped." As the trailers were not self-propelled, they could not be assessed any toll under the pre-2012 statute.

In 2012, however, the legislature amended section 316.003(21), defining "motor vehicle" as:

> (21) Motor vehicle.--Except when used in s. 316.1001, any self-propelled vehicle not operated upon rails or guideway, but not including any bicycle, motorized scooter, electric personal assistive mobility device, or moped. <u>For purposes of s. 316.1001, "motor vehicle" has the same meaning as in s. 320.01(1)(a)</u>.

§ 316.003(21), Fla. Stat. (2012) (emphasis added) (Ch. 2012-111, § 2, Laws of Fla., eff. July 1, 2012, to Dec 31, 2012) (currently renumbered as § 316.003(40)). Section 320.01(1)(a), in turn, provides:

> (1) "Motor vehicle" means:
>
> (a) An automobile, motorcycle, truck, trailer, semitrailer, truck tractor and semitrailer combination, or any other vehicle operated on the roads of this state . . . .

The 2012 amendment to the section 316.003(21) definition arguably created an ambiguity between the requirements in section 316.1001, requiring payment from the registered owner of the motor vehicle committing the toll violation, and the now-undefined responsible party for the toll when there were several owners involved in a "truck tractor and semitrailer combination," as is the case in the Plaintiffs' operations.

5

The Plaintiffs moved for class certification. At the class certification hearing, Tropical Trailer's co-owner and general manager, Alberto Vara, testified as the representative of all nine Plaintiffs. The second and only other witness was Stephan Andriuk, the Deputy Executive Director and Director of Toll Operations for MDX.

Vara testified that the two MDX toll violation databases he examined included over 83,000 trailer owners who had paid tolls to MDX between October 14, 2010, and April 2016 as a result of the video-based billing of trailer license plates. Vara described the methodology he used to analyze the data in the databases, and to compile the numbers he used. Although Vara was not able to state a precise number of other trailer owners that also owned the tractor truck pulling the trailer at the time of a citation,[1] the Plaintiffs themselves owned some 2,600 towed units that were always pulled by tractors owned and operated by other persons or entities. Vara also testified about the registration holds placed against his trailers for unpaid tolls accrued years after the trailers had been sold. He also

---

[1] Vara identified other trailer-owning companies that were billed by MDX that owned only the trailer and not the tractor pulling the combined vehicle: Angle Leasing, Omega, Electra Intermodal, TAW, Bowman Leasing, XTRA Lease, Strick Lease, Tote Marine, and Seaboard Marine. The MDX witness testified that "pretty much the names that he listed," had settled with MDX, but provided no definitive testimony regarding the number of putative class members that have not settled.

testified to collection attempts by MDX, including attempts at arrest, due to outstanding tolls.

Finally, Vara described his attempts to lobby for a fairer system of toll collection even before the beginning of this action. He testified that MDX billed the trailer owner incorrectly (and exclusively) rather than apportioning between tractor and trailer based on the number of axles of the composite vehicle transiting a set of sensors and cameras. He also described the difficulties and limited success in trying to pass through an erroneous tractor charge to the customers of the Plaintiffs who leased trailers (who might have knowledge the Plaintiffs did not have regarding the owner or operator of the tractor).

Andriuk testified on behalf of MDX. He stated that MDX had installed many front-facing cameras starting in 2013, and would have them in all of its toll facilities by August of 2017. He described the process MDX uses to store front tag pictures when the vehicle involved has more than two axles. He clarified on cross-examination that prior to June 30, 2012, no Toll by Plate fines were issued for front license plates in truck-trailer combinations. Andriuk also opined that Florida law permits MDX to bill trailer companies for tolls. Before this lawsuit, according to Andriuk, MDX settled all the toll disputes with trailer owners.[2]

_____

[2] Andriuk's testimony did not attempt to address all of the 83,000 trailer owner billings discussed by Vara in his testimony.

After the hearing, the trial court granted the motion for class certification. The court found that the elements of numerosity, commonality, typicality, and adequacy, under Florida Rule of Civil Procedure 1.220(a), were established. The trial court also found that Rule 1.220(b)(2) was satisfied because "the party opposing the class has acted or refused to act on grounds generally applicable to all the members of the class." The order granting the motion for certification found that Rule 1.220(b)(3) was satisfied because the class members' common questions of law and fact predominate over individual class member claims, and the class action process is superior to other available methods for the adjudication of the controversy.

The trial court defined two subclasses, rather than the four proposed by the Plaintiffs, dividing the class members into those affected before, and those affected after, the July 1, 2012, legislative amendment: "(1) the owners of all trailers towed on MDX roadways for which MDX used the toll by plate method of toll imposition from October 14, 2010, through June 30, 2012," and "(2) the owners of all trailers on MDX roadways for which MDX used the toll by plate method of toll imposition since July 1, 2012." MDX appealed the order granting class certification.

II.    Analysis

We review an order granting class certification for an abuse of discretion. Sosa v. Safeway Premium Fin. Co., 73 So. 3d 91, 98 (Fla. 2011). The burden of

8

proving the factual elements necessary to certify a class under Florida Rule of Civil Procedure 1.220 is on the movant. Initially, the Plaintiffs sought to certify four classes of claimants:

*CLASS A – DAMAGES AND INJUNCTIVE RELIEF:* All trailer owners whose trailer license tag was used by MDX between 10/14/10 and 6/30/12 to charge a toll in any amount.

*CLASS B – DAMAGES AND INJUNCTIVE RELIEF:* All trailer owners whose trailer license tag was used by MDX between 10/14/10 and 6/30/12 to charge a toll which is greater than the toll chargeable to two axle vehicles.

*CLASS C – DAMAGES AND INJUNCTIVE RELIEF:* All trailer owners whose trailer license tag was used by MDX after 10/14/10 to charge a toll which is greater than the toll chargeable for three axle vehicles.

*CLASS D – INJUNCTIVE RELIEF ONLY:* All trailer owners whose license tag was used by MDX after 10/14/10 to charge a toll in any amount. Excluded from Class D would be all trailer owners who also own the motorized vehicle pulling the trailer at the time the toll is incurred.

The trial court concluded that these proposed class definitions "either overlap, are partly duplicative, or are overbroad." Based on the change in the statutory definition of "motor vehicle" effective July 1, 2012, the trial court certified the two subclasses described in part I of this opinion.

The certification order includes findings of fact regarding each of the elements specified in Rule 1.220 and the decisional law applying that Rule. The

9

record includes competent, substantial evidence which, though disputed, supports the findings.

### A. Rule 1.220(a) Findings

The four requisite elements in Rule 1.220(a), commonly referred to as "numerosity," "commonality," "typicality," and "adequacy," were addressed in the findings.

### 1. Rule 1.220(a)(1): Numerosity

Addressing numerosity, more than 83,000 toll billings were shown to have been sent to trailer owners during the pertinent time interval. The nine proposed representative Plaintiffs themselves own over 2,600 towed, non-self-propelled units, and the record identifies numerous corporate parties that did not own the tractors that pulled their trailers during the class period (but which were nonetheless billed for tolls). MDX's evidence and argument that some such parties and tractor owners may have settled, or that the trailer billings were incontestable because the trailers were under common ownership with the tractors pulling them, are not per se obstacles to certification. Even a settling trailer owner may appreciate the benefit of the Plaintiffs' classwide prayer for injunctive relief to prevent future billing errors by MDX. "Individualized damage inquiries will also not preclude class certification." Sosa, 73 So. 3d at 107.

10

Class certification does not hinge on proving a specific number of members. Toledo v. Hillsborough Cty. Hosp. Auth., 747 So. 2d 958, 961 (Fla. 2d DCA 1999). The exact identity or location of each member need not be known for certification. The requirement is that class size not be based on mere speculation. Sosa, 73 So. 3d at 114. Here, it is not.

MDX's reliance on Leibell v. Miami-Dade County, 84 So. 3d 1078 (Fla. 3d DCA 2012), is unavailing. In that case, involving 1,400 participants in a toll program between the Venetian Islands and the mainland, "by the time of the hearing on the motion for certification, there existed evidence that only one of them, Ms. Leibell, had paid the program fee under protest. The evidence was that many more, represented by two homeowners' associations, do not wish to seek the remedies sought by Ms. Leibell in this lawsuit." Id. at 1083.[3] MDX has presented no such evidence of prospective class members that might oppose the relief sought by the Plaintiffs in the present case.

### 2. Rule 1.220(a)(2): Commonality

"The threshold of the commonality requirement is not high." Sosa, 73 So. 3d at 107. Sosa holds that commonality is satisfied if the common interest of putative class members is in the object or result of the action (here, money damages but also injunctive relief), or in the general question implicated in the

---

[3] The Court observed that the single plaintiff, Ms. Leibell, had so far "proven a class of one." Leibell, 84 So. 3d at 1084.

action.  Id.  The trial court correctly determined that "The claims of [the Plaintiffs] and the claims of the class depend upon a common contention."

### 3.  Rule 1.220(a)(3): Typicality

"The key inquiry for a trial court when it determines whether a proposed class satisfies the typicality requirement is whether the class representative possesses the same legal interest and has endured the same legal injury as the class members."  Id. at 114.  Here the legal interests are the same and not antagonistic. Before the 2012 legislative amendment, even the owner/operator of both the tractor and the trailer billed based on the trailer's plate has an argument that the five-axle billing should have been reduced by the number of axles on the trailer (i.e., trailers should not have been included in a bill at all).   Proof of the Plaintiffs' claims will, as the trial court found, automatically prove the claims of other members of the class.

### 4.  Rule 1.220(a)(4): Adequacy

Vara's testimony regarding his work on behalf of the Plaintiffs, all accomplished at Vara's own expense, and his investigation on behalf of all prospective class members, supports the trial court's conclusion that the Plaintiffs are adequate class representatives and have common, not conflicting, interests in the remedies sought on behalf of the class.  At the certification hearing, MDX

12

commendably stipulated that the Plaintiffs' counsel has the requisite qualifications, experience, and ability to prosecute the case as counsel for the class.

### B.    Rule 1.220(b) Findings

The trial court also conducted the required analysis under Rule 1.220(b). Rule 1.220(b)(2) is satisfied here because, as the trial court found, MDX has acted in a similar manner towards all class members with its challenged toll practice.[4] MDX's arguments regarding the statutory authority for its practices are the same for all class members.

The trial court also considered Rule 1.220(b)(3).  The court found that common questions of law and fact predominate, and that class treatment is superior to other forms of representation.  Common questions of fact predominate if the class representative has established a "reasonable methodology for generalized proof of class-wide impact." Sosa, 73 So. 3d at 112.  The record establishes such a methodology.  MDX has not identified any individual issues that predominate, except to argue that individual treatment of the scores of cases would be preferable.

The sheer size of this class demonstrates the superiority of class treatment. Fla. R. Civ. P. 1.220(b)(3).  Here, as in Sosa, there are potentially thousands of

---

[4]  The fact that MDX may have settled some claims regarding those toll practices (as alluded to by Andriuk) does not alter the uniformity of MDX's "Toll by Plate" procedures affecting the class.

prospective class members. Their individual claims are too small to expect them to be adjudicated separately. Certainly, separate joinder of the class members would be impractical. See Broin v. Philip Morris Co., Inc., 641 So. 2d 888, 889 (Fla. 3d DCA 1994) (concluding that joinder of 60,000 people in the class would be impractical). Given the size of this class, class action is a more manageable and efficient way to proceed, and the most efficient use of judicial resources.

III.    The Dissent

Our dissenting colleague contends that the certified classes are "speculative and overbroad," such that the trial court abused its discretion. We disagree.

Sosa directs a trial court to restrict its examination of the requirements for certification "to the substance of the motion and not the merits of the cause of action or questions of fact for a jury." Sosa, 73 So. 3d at 105 (citing Morgan v. Coats, 33 So. 3d 59, 63-64 (Fla. 2d DCA 2010)). The substance of the Plaintiffs' motion for certification in this case is evident: the "Toll by Plate" method adopted by MDX did not, both before and after the 2012 redefinition of "motor vehicle," charge the proper party the proper amount as between tractor trucks and the trailers towed by those trucks. There was no testimony by either witness at the certification hearing disputing that (a) tractor-trailer combinations travel the MDX expressways regularly and in great numbers, and (b) when the driver of the tractor

truck and owner of the trailer are different persons or entities, "Toll by Plate" lacks a mechanism to bill each party for its proper portion of the total toll.

Nor was there any contention or evidence that each individual toll billed erroneously could be efficiently addressed in a separate lawsuit and prosecuted to judgment. The dissent's concern that some tractor-trailer combinations (both owned by a single responsible operator) may have been correctly billed by the "Toll by Plate" method establishes that some class members may be unable to prove damages, but that is not a basis for reversing the certification order.

Again, the Florida Supreme Court's clear directive to the trial court in Sosa, quoting Morgan v. Coats, is to focus "on whether the requirements of rule 1.220 have been met and not on whether the moving party will prevail on the merits." Id. It is thus of no moment, at this phase of the proceeding, whether some trailer owners will opt out of the class, or whether they may also have operated the tractor trucks which pulled their trailers (precluding such owners from recovering damages).

The record before us presents competent, substantial evidence that numerosity exists, even if some trailer owners may be unable to prove compensable damages. MDX's (and the dissent's) reliance on Lucarelli Pizza & Deli v. Posen Constr., Inc., 173 So. 3d 1092 (Fla. 2d DCA 2015), regarding numerosity and overbreadth is unpersuasive. In that case, two plaintiffs sought to

certify a class of claimants who alleged lost business due to a contractor's rupture of a natural gas line serving approximately 1,200 customers of the gas company. The Second District affirmed the trial court's denial of certification, determining that the two movants "did not present any evidence that a single member of the class other than themselves had suffered any economic loss." Id. at 1093.

The dissent also contends that the majority opinion "implicitly relies upon the 'tipsy coachman' doctrine" (citing Porter v. Porter, 913 So. 2d 691, 694 (Fla. 3d DCA 2005). We must again respectfully disagree. The trial court reached the right result, a finding of numerosity supporting certification, for the right reason and based on the record. We are not at liberty to conduct a "de novo" review of the record or to make our own "independent determination" as to whether the Plaintiffs satisfied that requirement of Rule 1.220. Sosa, 73 So. 3d at 103.

IV.  Conclusion

The class certification motion was thoroughly briefed and argued by experienced counsel on both sides. The evidentiary hearing, though shorter than many, included competent, substantial evidence establishing the elements required for certification. The very nature of the claim—allegedly-improper toll charges on heavily-traveled expressways with tens of thousands of pertinent billings—supports the adjudication of the claims as a class action. No single trailer owner

could cost-effectively maintain such an action, seeking reimbursement for a series of charges of a few dollars per "Toll by Plate" billing.

The trial court was both diligent and vigilant (reforming the class definitions, for example) in assessing the required elements. We affirm the order and findings in all respects.

Certification order affirmed.

LUCK, J., concurs.

Miami-Dade Expressway Auth., et al., v. Tropical Trailer Leasing, L.L.C., et al., Case No. 3D16-2851

ROTHENBERG, C.J. (dissenting).

Miami-Dade Expressway Authority ("MDX") and Javier Rodriguez, P.E. appeal the trial court's entry of a non-final order granting a motion for class certification filed by Tropical Trailer Leasing, L.L.C. ("Tropical") and its eight affiliates, which are also co-plaintiffs in this case (collectively, "the plaintiffs").[5] I

---

[5] The operative complaint reveals that the nine plaintiffs in this case are closely related entities. In fact, the complaint alleges that "[Tropical] is in the business of providing complete management services to each of its eight affiliates[.]"

17

dissent because the majority affirms the entry of an order certifying a class that is both speculative and overbroad. Because Tropical failed to prove that the proposed class was so numerous that joinder was impracticable and because the trial court improperly included uninjured parties in its class definition, the trial court's entire class certification analysis was flawed. Accordingly, the trial court abused its discretion by certifying the class.

According to the operative complaint, Tropical seeks damages and injunctive relief in connection with MDX's allegedly unlawful tolling practices. At times, Tropical's claims seem to rest on alleged ambiguity in the applicable statutory framework governing tolls, but at other times, Tropical alleges that the injuries are caused by MDX's tolling methods. Throughout this litigation, however, the gravamen for Tropical's claims has been the following alleged injury: a vehicle towing a trailer uses an MDX roadway without a working toll transponder; sometimes, the towing vehicle is owned by one party, and the trailer is owned by another party; MDX captures a picture of and relies upon only the rear license plate attached to the trailer in order to impose a toll for the towing vehicle and the attached trailer (this is referred to as the "Toll by Plate" method); and thus, MDX improperly charges the toll against the registered owner of the trailer, which in some cases differs from the owner of the towing vehicle. Tropical and its affiliates are in the trailer leasing business, and they own fleets of leased trailers,

18

but they do not own the vehicles that tow them. Therefore, it and other trailer leasing companies claim that they suffer acutely from MDX's allegedly unlawful tolling methods.

Although this alleged injury might be particularly damaging to those in the trailer leasing industry, the trial court entered an order certifying the following two subclasses that stretch far beyond the scope of the trailer leasing industry: "(1) the owners of **all** trailers towed on MDX roadways for which MDX used the toll by plate method of toll imposition from October 14, 2010 through June 30, 2012," and "(2) the owners of **all** trailers on MDX roadways for which MDX used the toll by plate method of toll imposition since July 1, 2012." (emphasis added).[6] After the trial court entered its order granting class certification, MDX appealed pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(vi).

## ANALYSIS

A trial court's entry of an order granting a motion for class certification is reviewed on appeal for an abuse of discretion. Sosa v. Safeway Premium Fin. Co., 73 So. 3d 91, 102 (Fla. 2011). However, "[t]he discretion of a trial court is to be applied within the structure of rule 1.220." Id. at 103.

---

[6] As discussed more fully in the majority opinion, the dates in the class definition pertain to a change in the relevant statutory framework due to a legislative amendment in 2012.

19

In general, the burden of proving the class certification requirements found in Florida Rule of Civil Procedure 1.220 rests with the party seeking class certification. Id. at 106. According to rule 1.220(a), a class may not be certified unless the trial court makes the following conclusions:

> (1) the members of the class are so numerous that separate joinder of each member is impracticable, (2) the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class, (3) the claim or defense of the representative party is typical of the claim or defense of each member of the class, and (4) the representative party can fairly and adequately protect and represent the interests of each member of the class.

These requirements are frequently referred to in shorthand as the requirements of (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. Terry L. Braun, P.A. v. Campbell, 827 So. 2d 261, 266 (Fla. 5th DCA 2002). The trial court must rigorously analyze whether these prerequisites have been satisfied on the basis of sufficient information and evidence. Freedom Life Ins. Co. of Am. v. Wallant, 891 So. 2d 1109, 1114 (Fla. 4th DCA 2004) ("In determining whether these prerequisites have been established, a 'rigorous analysis' must be conducted."); Terry L. Braun, 827 So. 2d at 265.

As to the numerosity requirement, the party seeking class certification is required to prove that the class is so numerous that separate joinder of each party would be impracticable. Leibell v. Miami-Dade Cty., 84 So. 3d 1078, 1083 (Fla. 3d DCA 2012) ("Satisfaction of [the numerosity] prerequisite is not just a test of

20

numbers. . . . [I]t is a practicability requirement of which class size is but one inherent part."). The party seeking class certification cannot rely on speculation when proving that the proposed class is sufficiently numerous. Sosa, 73 So. 3d at 114 (stating that "class certification is proper if the class representative does not base the projected class size on mere speculation"); Toledo v. Hillsborough Cty. Hosp. Auth., 747 So. 2d 958, 961 (Fla. 2d DCA 1999) ("It is well-settled that, while a plaintiff is not required to plead the exact number of persons included in a proposed class, a plaintiff is precluded from relying on speculation as to class size.").

A class will also fail to satisfy the numerosity requirement if it is overbroad. Lucarelli Pizza & Deli v. Posen Constr., Inc., 173 So. 3d 1092, 1094 (Fla. 2d DCA 2015) (stating that "the proposed class was overbroad because it included many members who did not suffer and would not be able to prove any injury or actual damage"); Leibell, 84 So. 3d at 1083 ("[A] proposed class, even a moderately large one . . . , which appears to the naked eye to be 'adequately defined and clearly ascertainable,' still will fail if it is overbroad.") (citation omitted); Ouellette v. Wal-Mart Stores, Inc., 888 So. 2d 90, 92 (Fla. 1st DCA 2004) (stating that the proposed class of "all current and former hourly Wal-Mart employees in Florida on or subsequent to July 13, 1997" was overbroad because it included many members "who never worked off the clock and therefore [had] no interest in the lawsuit").

21

In the instant case, the trial court's finding as to numerosity begins and ends the class certification analysis. The trial court found that the numerosity requirement was met "based on the enormous number of trailer tag tolls imposed since 2010." Specifically, the trial court noted that Alberto Vara, Tropical's co-owner and general manager, testified at the evidentiary hearing on class certification that the two MDX toll violation databases he examined included the names and addresses of more than 83,000 trailer owners who have paid tolls to MDX between October 2010 and April 2016, tolls which were assessed using MDX's allegedly unlawful tolling methods. Thus, based on the high number of trailers that MDX charged a toll, and nothing more, the trial court concluded that "there are at least 40 members in each proposed historical class."

The trial court erred by finding that the numerosity requirement was satisfied based on this evidence because the trial court could only speculate as to how many trailer owners in the MDX databases would actually be proper parties in this litigation. For example, as Tropical readily concedes, many of the parties on the MDX databases own both the trailer and the vehicle towing the trailer. These parties would not be proper class members because they were correctly charged for the entire trailer/towing vehicle combination, and any moneys they would receive relating to this litigation would constitute a windfall.

For much the same reason, the certified class is overbroad because it includes many uninjured parties who, therefore, have no interest in the litigation. To be sure, Tropical does not contend that each of the members in the certified class have incurred monetary damages relating to MDX's tolling methods, but instead suggests that these extra class members might be later excised from the class if they choose to opt out or if MDX proves up an affirmative defense against them. Neither suggestion has merit. First, it is unconvincing to suggest that any of the improperly included class members who stand to receive a toll refund will in good faith simply opt out of the class action. Second, and more importantly, it is not MDX's obligation to weed out class members who should not have been included in the first place. As stated above, Tropical bears the burden of proving that its class meets the requirements of numerosity; MDX does not need to disprove class membership.[7]

By comparison, consider the class that was certified in Florida Department of Agriculture & Consumer Services v. Lopez-Brignoni, 114 So. 3d 1138, 1140 (Fla. 3d DCA 2012): "All owners of citrus trees situated within Miami–Dade County, incorporated or otherwise, not used for commercial purposes, which were

---

[7] Thus, it is surprising that the majority suggests that there was no "contention or evidence that each individual toll billed erroneously could be efficiently addressed in a separate lawsuit and prosecuted to judgment." Majority Op. at 14. MDX has no burden to introduce such evidence—the burden is on Tropical to demonstrate that it would be impracticable to address each toll in a separate lawsuit.

not determined by the Department to be infected with citrus canker and were destroyed under the [Citrus Canker Eradication Program] on or after January 1, 2000[.]" Id. It would have been entirely improper for the trial court to certify a class of all citrus tree owners, including those whose citrus trees were not destroyed, based solely on an index of everyone in Miami-Dade County who owns citrus trees. It is similarly inappropriate, here, to certify a class of all trailer owners, regardless of whether they were improperly charged tolls, based on a database of every trailer owner who was charged a toll.

In short, it is apparent from the trial court's order certifying the class that the trial court's "conclusion derived from the evidence constituted a giant 'leap of logic.'" Canal Ins. Co. v. Gibraltar Budget Plan, Inc., 41 So. 3d 375, 378 (Fla. 4th DCA 2010) ("When the layers are peeled away, what is left is insufficient proof of numerosity to support the certification of the class.").

I will now address the majority's numerosity analysis, and I have chosen to address it separately because it relies on grounds not raised in the motion for class certification, not contained in the trial court's own numerosity analysis in its order certifying the class, and not raised or argued by Tropical on appeal. Thus, the majority implicitly relies upon the "tipsy coachman" doctrine. Porter v. Porter, 913 So. 2d 691, 694 (Fla. 3d DCA 2005) (stating that "the tipsy coachman doctrine allows an appellate court to affirm a trial court that reaches the right result, but for

24

the wrong reasons so long as there is any basis which would support the judgment in the record") (internal quotation marks omitted) (quoting <u>Dade Cty. Sch. Bd. v. Radio Station WQBA</u>, 731 So. 2d 638, 644 (Fla. 1999)).[8]

The majority's numerosity analysis refers to three groups that allegedly form the sufficiently numerous class: (1) thousands of owners charged a toll according to the MDX databases; (2) nine co-plaintiffs; and (3) what the majority refers to as "numerous corporate parties." I have already addressed how the MDX databases led to a speculative and overbroad class definition, and it can hardly be said that the presence of the nine plaintiffs, comprised of one management company and its eight closely associated affiliates, justify a finding that joinder is impracticable. The majority references the fact that these named plaintiffs own more than 2,600 towed trailers, but that is evidence of the extent of Tropical's **damages**, not the impracticability of the plaintiffs' joinder. Thus, ultimately, if Tropical cannot satisfy its burden to establish numerosity by relying on MDX databases, which admittedly includes an indeterminate number of injured and uninjured proposed class members, or the nine named plaintiffs, the majority's analysis must rest solely on what it calls "numerous corporate parties."

---

[8] The majority states that it is not relying on the tipsy coachman doctrine. However, the trial court did not rely on evidence of "numerous corporate parties" when it found the class sufficiently numerous, and yet the majority does. If the majority contends that the trial court reached the right result for the right reason, then it also concedes that its references to the "numerous corporate parties" are mere obiter dicta.

The only evidence of these potential corporate parties in the record comes from Mr. Vara's testimony at the certification hearing, wherein he mentioned **ten** companies who own trailers but who do not own the vehicles that tow them. There are significant problems with relying on these passing remarks. Tropical has not suggested that the joinder of nine plaintiffs and ten other companies in the trailer leasing industry would be impracticable, there is nothing in the record to suggest that their joinder would be impracticable, and it is unclear whether and to what extent these ten corporate parties might have an interest in this case. The majority's reliance on these ten corporate entities to satisfy the numerosity requirement is therefore flawed because: (1) Mr. Vara's mention of these companies does not demonstrate one way or the other whether their joinder would be impracticable; and (2) given that the record regarding whether these entities are proper class members is undeveloped, the tipsy coachman doctrine cannot be relied on to affirm the class certification order. Robertson v. State, 829 So. 2d 901, 906-07 (Fla. 2002) (stating that the appellate court will correctly refuse to affirm on an alternative theory not argued to the trial court where "the record does not reflect an evidentiary basis sufficient to permit" the appellate court to make a determination as to the alternative theory) (quoting State, Dep't of Revenue ex rel. Rochell v. Morris, 736 So. 2d 41, 42 (Fla. 1st DCA 1999)) (emphasis omitted).

It is worth noting that with only speculative proof of numerosity, the remainder of the class certification analysis is severely impacted. To prove commonality, the party seeking class certification must demonstrate that "resolution of a class action [will] affect all or a substantial number of the class members, and that the subject of the class action presents a question of *common or general interest*." Sosa, 73 So. 3d at 107 (emphasis in original). However, if it is unknown how many members in a class actually suffered an injury, then there can be no determination about whether "all or a substantial number" of them would be affected by the resolution of the class action.

Similarly, the typicality requirement focuses on the similarities between the the class representative and the class members. Id. at 114 ("The key inquiry for a trial court when it determines whether a proposed class satisfies the typicality requirement is whether the class representative possesses the same legal interest and has endured the same legal injury as the class members."). This analysis is hindered by the fact that Tropical's legal interests and injuries might be similar to some class members who were allegedly improperly charged a toll, but Tropical's legal interests and injuries will definitely be dissimilar to those class members who suffered no injury at all when they were charged a toll.

Finally, in its response to this dissent, the majority relies heavily on a principle espoused in Sosa, stating that "a trial court [must] restrict its examination

of the requirements for certification 'to the substance of the motion and not the merits of the cause of action or questions of fact for a jury.'" Majority Op. at 14 (quoting Sosa, 73 So. 3d at 105). At first glance, this would seem to preclude any evaluation of evidence that touches on the merits of a case, but that would make no sense. A court cannot perform even a cursory class certification analysis without evaluating the evidence presented regarding the nature of the claims, whether the proposed class members' interests are the same as the class representative's interests, and indeed, whether a proposed class actually includes parties injured by the class representative's own rubric. It is therefore completely understandable that the Florida Supreme Court would clarify its statement almost immediately after the majority's cited quotation from Sosa:  "However, if consequential to its consideration of whether to certify a class, a trial court may consider evidence on the merits of the case as it applies to the class certification requirements." Id. To that end, this dissent has shown why the trial court erred by including uninjured parties in its calculation of class members for the purpose of determining whether Tropical satisfied the numerosity requirement. There is no suggestion here about whether Tropical will ultimately prevail on the merits.

It is also difficult to square the majority's position with the analysis performed in Lucarelli and Ouellette, where the Second and First District Courts of Appeal, respectively, evaluated whether the proposed class included parties who

were actually injured in the way suggested by the class representatives. Lucarelli, 173 So. 3d at 1094 ("[T]he proposed class was overbroad because it included many members **who did not suffer and would not be able to prove any injury or actual damage**.") (emphasis added); Ouellette, 888 So. 2d at 92. The majority's analysis fails to account for the reasoning in these precedents.

## CONCLUSION

Our standard of review is not de novo, but the abuse of discretion standard of review is not a rubber stamp. Because Tropical failed to produce evidence proving that joinder of proper class members is impracticable, but instead offered a massive list that Tropical admits includes an indeterminate number of parties who did not suffer damages as a result of MDX's allegedly improper tolling methods, Tropical has clearly failed to satisfy the numerosity requirement provided in rule 1.220(a). This shortcoming is fatal to the remainder of the class certification analysis. Therefore, the trial court abused its discretion by granting Tropical's motion for class certification.[9] I accordingly dissent from the majority opinion and would reverse the order granting Tropical's motion for class certification.

---

[9] I would also note that if we reverse the instant order certifying the class, our reversal would in no way preclude Tropical from filing another motion to certify in the future if it is able to establish the requirements in rule 1.220(a). See Toledo, 747 So. 2d at 961 (stating that "with the presentation of new evidence, the Plaintiffs again may move for class certification at any time before entry of a judgment on the merits").

29