# Third District Court of Appeal
## State of Florida

Opinion filed May 10, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1174
Lower Tribunal No. 20-6035
_____

**Pet Supermarket, Inc.,**
Appellant,

vs.

**Troy Eldridge,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, William Thomas, Judge.

Kelley Drye & Warren LLP and Becca J. Wahlquist (Los Angeles, CA); Shutts & Bowen LLP and Frank A. Zacherl and Daniel E. Nordby (Tallahassee), for appellant.

Carey Rodriguez Milian, LLP and David P. Milian and Juan J. Rodriguez and Jennifer M. Hernandez, for appellee.

Before FERNANDEZ, C.J., and SCALES and LOBREE, JJ.

LOBREE, J.

Pet Supermarket, Inc. seeks review of the trial court's nonfinal class certification order under Florida Rule of Appellate Procedure 9.130(a)(3)(C)(vi). Pet Supermarket primarily contends that the plaintiff and putative class representative, Troy Eldridge, lacks standing to pursue this suit. We agree, reverse the class certification, and direct that the case be dismissed.[1]

## FACTUAL AND PROCEDURAL HISTORY

Eldridge visited a Pet Supermarket store in December 2017 in Miami, Florida. During the visit, Eldridge learned about the store's promotion in which customers could text the word "PETS" to the short code "65047" and be entered into a contest to win free dog food for a year. Eldridge gave his phone to one of Pet Supermarket's employees, who texted "PETS" from Eldridge's phone to the short code. Eldridge immediately received two text messages:

> PETS: Entry received! You're incld in this month's drawing and to receive text offers. Msg&Data rates may apply. 4msgs/mo. Text HELP for help - Reply STOP to end
>
> ***
>
> PETS: No purchase necessary. 1 winner/mo. Rules at http://mmrs.co/5pf5F You consent to receive autodialed text

---

[1] Because Eldridge's lack of standing is dispositive, we do not address the remaining issues raised on appeal by Pet Supermarket.

messages from Pet Supermarket. -Reply STOP to end

Eldridge received text messages again on February 24, 2018, April 20, 2018, May 11, 2018, May 25, 2018, and June 8, 2018. All of the texts contained the message "Reply STOP to end," and concerned promotional or advertisement information.

After receiving the texts, Eldridge filed a putative class action against Pet Supermarket in the United States District Court for the Southern District of Florida alleging a violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b), which is a federal statute prohibiting use of "automatic telephone dialing systems to call residential or cellular telephone lines without the consent of the called party," Salcedo v. Hanna, 936 F.3d 1162, 1166 (11th Cir. 2019). Eldridge alleged that Pet Supermarket violated the TCPA by sending him seven unauthorized text messages. The federal district court dismissed Eldridge's complaint for lack of standing, finding that under binding authority from the United States Eleventh Circuit Court of Appeals in Salcedo, Eldridge's allegations of loss of privacy, wasted time, and intrusion upon seclusion did not constitute a concrete injury in fact for Article III standing purposes. Eldridge v. Pet Supermarket Inc., 446 F.Supp. 3d 1063, 1070–72 (S.D. Fla. 2020). In rejecting Eldridge's claim of an injury based on loss of privacy, the district court found that "[l]ike the plaintiff in

3

Salcedo, Plaintiff 'has not alleged that he was in his home when he received [the] message[s],' or 'anything like enjoying dinner at home with his family and having the domestic peace shattered by the ringing of the telephone,' or any similar scenarios." Id. at 1070 (quoting Salcedo, 936 F.3d at 1170, 1172). Concerning Eldridge's claim that the text messages depleted his cell phone battery or consumed his data plan, the district court found that Eldridge's allegations did not survive a factual attack for lack of standing because he "has not provided any evidentiary support to show that the texts at issue consumed his phone's battery or data and messaging plan, or caused him to incur any specific charges." Id. at 1072.

Based on the same text messages, Eldridge then brought a TCPA suit against Pet Supermarket in state court, asserting a claim on behalf of himself and a putative class. Eldridge alleged that the "quantity and quality of messages . . . constituted a barrage of messages that caused [him] to incur repeated aggravation by annoying him, costing him resources, and interfering with his daily activities such as driving safely or peacefully putting his children to bed." Compl. at ¶ 34. Particularly, as to the February 24 text, Eldridge alleged that it "had the effect of blasting through and disrupting the Plaintiff's domestic weekend peace." Id. at ¶ 25. Eldridge further claimed that the texts "invaded [his] privacy, intruded upon his seclusion and solitude,

4

wasted his time by requiring him to open and read the messages, depleted his cell phone battery, caused him to incur a usage allocation deduction to his text messaging or data plan, and took up approximately 190 bytes of memory" on his cell phone.  Id. at ¶ 35.

Eldridge moved for class certification, which Pet Supermarket opposed.  Pet Supermarket also moved for summary judgment, arguing that Eldridge lacked standing to sue under the TCPA because he had not suffered a concrete injury.  Eldridge responded that because Florida's standing requirements are "more relaxed" than the federal standing requirements under Article III of the United States Constitution, he need not show any actual injury and may proceed on the basis of Pet Supermarket's violation of the TCPA alone.[2]  Eldridge also argued that he had standing even under a more rigid, federal-style concrete injury standard, because he had sufficiently alleged both tangible and intangible harms.  In support of this assertion, Eldridge pointed to his allegations that the February 24 text "interfered with his domestic peace"—an allegation that the district court had

---

[2] We are aware of the current split between the United States Eleventh Circuit Court of Appeals and other federal circuit courts about whether a statutory violation of the TCPA establishes a concrete injury for the purposes of Article III standing.  Compare Salcedo, 936 F.3d at 1162, with Cranor v. 5 Star Nutrition, L.L.C., 998 F.3d 686 (5th Cir. 2021).  We decline to weigh in on this conflict, as we evaluate standing in this case under Florida law.

concluded was fatally missing in his federal complaint—and that he had suffered harm in the form of battery depletion, data plan loss, and use of his cell phone's memory.

The trial court heard Pet Supermarket's summary judgment motion and Eldridge's class certification motion. Thereafter, the trial court denied Pet Supermarket's summary judgment motion and ruled that Eldridge had standing to pursue his TCPA claim. The trial court found that Eldridge had standing because he "need only allege a violation of his statutory rights under the TCPA to have standing. He need not allege or demonstrate an actual injury." Order Den. Mot. Summ. J. p.5. The trial court also granted Eldridge's motion for class certification. This appeal followed.

## STANDARD OF REVIEW

This Court reviews the lower court's decision to certify a class for abuse of discretion. Sosa v. Safeway Premium Fin. Co., 73 So. 3d 91, 105 (Fla. 2011). However, before determining whether the requirements for class certification are met, a trial court must address the threshold issue of whether the class representative has standing. Id. at 116; see also United Auto. Ins. Co. v. Diagnostics of S. Florida, Inc., 921 So. 2d 23, 25 (Fla. 3d DCA 2006). "A trial court's decision as to whether a party has satisfied the standing requirement is reviewed de novo." Sosa, 73 So. 3d at 116.

6

## ANALYSIS

Eldridge first asserts that because "the doctrine of standing does not exist in Florida 'in the rigid sense employed in the federal system,'" Allstate Ins. Co. v. Kaklamanos, 843 So. 2d 885, 895 (Fla. 2003) (quoting Dep't of Revenue v. Kuhnlein, 646 So. 2d 717, 720 (Fla.1994)), he need not allege or demonstrate an actual injury in order to have standing in a Florida state court. Specifically, Eldridge argues that his allegation of a bare procedural violation of the TCPA is sufficient to establish his standing to pursue a class action claim for a violation of the federal statute. To be sure, the fact that Eldridge's allegations fail to satisfy a federal court's standing requirement does not mean that the same holds true in a Florida court, as we are not constrained by the "hard floor" of injury in fact imposed by Article III jurisdiction. Summers v. Earth Island Inst., 555 U.S. 488, 497 (2009); see ASARCO Inc. v. Kadish, 490 U.S. 605, 617 (1989) (stating that "the constraints of Article III do not apply to state courts" even when addressing a federal statute).

Nonetheless, it is equally true that "Florida law also imports an injury in fact requirement under our standing framework." Saleh v. Miami Gardens Square One, Inc., 353 So. 3d 1253, 1255 (Fla. 3d DCA 2023) (citing State v. J.P., 907 So. 2d 1101, 1113 n.4 (Fla. 2004)). Relying on decisions by the

7

United States Supreme Court, in J.P., the Florida Supreme Court "articulated the three requirements for standing," Citizens for Responsible Dev., Inc. v. City of Dania Beach, 358 So. 3d 1 (Fla. 4th DCA 2023), stating as follows:

> There are three requirements that constitute the "irreducible constitutional minimum" for standing. Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 771, 120 S. Ct. 1858, 146 L.Ed.2d 836 (2000). First, a plaintiff must demonstrate an "*injury in fact*," which is "*concrete*," "*distinct and palpable*," and "*actual or imminent*." Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S. Ct. 1717, 109 L.Ed.2d 135 (1990). Second, a plaintiff must establish "a causal connection between the injury and the conduct complained of." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992). Third, a plaintiff must show "a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact." Stevens, 529 U.S. at 771, 120 S. Ct. 1858.

907 So. 2d at 1113 n.4 (emphasis added); accord Southam v. Red Wing Shoe Co., Inc., 343 So. 3d 106, 109 (Fla. 4th DCA), review denied, SC22-1052, 2022 WL 16848677 (Fla. Nov. 10, 2022); DeSantis v. Fla. Educ. Ass'n, 306 So. 3d 1202, 1213 (Fla. 1st DCA 2020).

Thus, "[a]lthough there is no precise formula to divine the line between an interest that is sufficient for standing purposes, and one that is not, Florida courts look to three familiar concepts—injury, causation, and redressability— to assess a plaintiff's standing." Cmty. Power Network Corp. v. JEA, 327 So. 3d 412, 415 (Fla. 1st DCA 2021). "Under these concepts, a plaintiff first must identify an actual or imminent injury that is concrete, distinct, and palpable."

8

Id. Furthermore, within the context of a class action claim, "the class representative must illustrate that a case or controversy exists between him or her and the defendant, and that this case or controversy will continue throughout the existence of the litigation." Sosa, 73 So. 3d at 116. A case or controversy "exists 'if a party alleges an actual or legal injury.'" Southam, 343 So. 3d at 110 (quoting Sosa, 73 So. 3d at 116–17). "If it is shown that the plaintiff who seeks class certification suffered no injury and, thus, has no cause of action against the defendant, the class should not be certified." City of Opa-Locka, Fla. v. Suarez, 314 So. 3d 675, 679 (Fla. 3d DCA 2021).

Given the above principles, we find no merit to Eldridge's contention that his allegation of a statutory violation of the TCPA alone establishes his standing to bring suit. Although outside the constraints of Article III, Eldridge must still demonstrate a concrete harm or injury from the TCPA violation to demonstrate his standing in a Florida state court. See Southam, 343 So. 3d at 108, 110–11 (affirming trial court's dismissal of class action claiming violation of federal statute because allegation of "mere statutory violation" did not show "a concrete injury sufficient for standing"; "[A] purely illegal action in the absence of resulting harm does not confer standing on an individual. Rather, 'individuals "must allege some threatened or actual injury resulting from the putatively illegal action."'" (quoting Olen Props. Corp. v.

9

<u>Moss</u>, 981 So. 2d 515, 517 (Fla. 4th DCA 2008))); <u>Saleh</u>, 353 So. 3d at 1255 (affirming trial court's dismissal of plaintiff's federal statutory claim for lack of standing where plaintiff alleged violation of statute but acknowledged he suffered no actual harm (relying on <u>Southam</u> and citing <u>Spokeo, Inc. v. Robins</u>, 578 U.S. 330, 341 (2016) (holding that "a bare procedural violation, divorced from any concrete harm" does not confer standing))).

Next, Eldridge contends that even under an injury in fact standing requirement, he sufficiently alleged a concrete injury in the form of an invasion of his privacy. Indeed, as the United States Supreme Court guides, concreteness for standing purposes may be shown where a plaintiff suffers an intangible harm with a "close relationship" to the harm associated with a common law analogue.[3] <u>TransUnion LLC v. Ramirez</u>, 141 S. Ct. 2190, 2204 (2021) (explaining that as to "the concrete-harm requirement in particular, [the <u>Spokeo</u>] . . . . inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury" (citation omitted)). Here, Eldridge seeks to analogize the intangible injury he suffered from receiving the texts to a type of invasion of privacy known as intrusion upon seclusion. Because we are concerned with whether Eldridge has

---

[3] We consider federal case law on the issue of standing persuasive in this context. <u>See</u> <u>Southam</u>, 343 So. 3d at 111.

10

standing to sue in Florida state courts, we look to what our state supreme court has said about the common law tort of intrusion upon seclusion.

The Florida Supreme Court has stated that the tort of intrusion upon seclusion deals with an intrusion "into a 'place' in which there is a reasonable expectation of privacy." Allstate Ins. Co. v. Ginsberg, 863 So. 2d 156, 162 (Fla. 2003). In other words, an invasion of privacy by intrusion requires "physically or electronically intruding into one's private quarters." Id. (affirming statement in Agency for Health Care Admin. v. Associated Indus. of Florida, Inc., 678 So. 2d 1239, 1252 n.20 (Fla. 1996), that an "intrusion— physically or electronically intruding into one's private quarters" constitutes tort of invasion of privacy); see also Hammer v. Sorensen, 824 F. App'x 689, 695 (11th Cir. 2020) ("[T]he Supreme Court of Florida has construed the tort of intrusion upon seclusion [to] . . . . require[] a plaintiff to show an intrusion into a private place and not merely a private activity." (citation omitted) (citing Ginsberg, 863 So. 2d at 161 n.3, 162)); Spilfogel v. Fox Broad. Co., 433 F. App'x 724, 727 (11th Cir. 2011) ("Florida law explicitly requires an intrusion into a private place and not merely into a private activity."). The intrusion must also be one that would be "highly offensive to a reasonable person." Jackman v. Cebrink–Swartz, 334 So. 3d 653 (Fla. 2d DCA 2021) (quoting Restatement (Second) of Torts § 652B (Am. Law Inst. 1977)); see also

11

Cason v. Baskin, 20 So. 2d 243, 251 (Fla. 1944) (noting that protection against invasion of privacy "must be restricted to 'ordinary sensibilities'"); Stoddard v. Wohlfahrt, 573 So. 2d 1060, 1062 (Fla. 5th DCA 1991) (stating that "unacceptable conduct" upon which a claim of invasion of privacy is based is such that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" (quoting Ponton v. Scarfone, 468 So. 2d 1009 (Fla. 2d DCA 1985))).

On appeal, Eldridge maintains that his allegations confirm his standing, including claims that the texts constituted a "barrage[] of messages," and that the texts caused him "to incur repeated aggravation by annoying him." Beyond this "conclusory recitation of harms," Frater v. Lend Smart Mortgage, LLC, 22-22168-CIV, 2022 WL 4483753, at *4 (S.D. Fla. Sept. 27, 2022), Eldridge argues that the texts "invaded [his] privacy, intruded upon his seclusion." But the only text reflected by the record arguably intruding on his private space was the February 24th text, which allegedly "had the effect of blasting through and disrupting [Eldridge's] domestic weekend peace." Even assuming the single February 24th text intruded into Eldridge's private quarters, Eldridge must still show that the intrusion was highly offensive to a reasonable person for the harm to be comparable to injury suffered by an intrusion upon seclusion under Florida common law. See, e.g., TransUnion

12

LLC, 141 S. Ct. at 2209 (explaining that where element "essential to liability" for comparator common law tort is missing from plaintiff's alleged intangible harm, the asserted harm has no "close relationship" to harm associated with comparator). We find that Eldridge's receipt of one text message while at home, during the weekend, simply does not rise to the level of outrageousness required for an invasion of privacy, i.e., that it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," and therefore, Eldridge's alleged statutory injury is not akin to Florida's common law harm of intrusion upon seclusion. Thus, Eldridge has not alleged a concrete injury, and does not have standing on this basis either.[4]

## CONCLUSION

In short, Eldridge has failed to establish any harm from Pet Supermarket's alleged violation of the TCPA, either in the form of a pure procedural violation or an intrusion into his privacy. Therefore, we conclude that the trial court erred in finding Eldridge had standing and subsequently

---

[4] To the extent Eldridge argues on appeal that he suffered actual harm in the form of a drained cell phone battery, deduction from his data plan, and usage of his cell phone's memory, Eldridge points to no summary judgment evidence on this claim. The trial court did not determine whether Eldridge had standing on this basis. We do not decide the issue in the first instance. See Akers v. City of Miami Beach, 745 So. 2d 532 (Fla. 3d DCA 1999).

certifying the class. Accordingly, we reverse and remand with directions to dismiss the complaint. United Auto. Ins. Co., 921 So. 2d at 25 ("When the class plaintiff lacks individual standing, the proper procedure is to deny class certification and dismiss the complaint."); accord City of Opa-Locka, Fla., 314 So. 3d at 680.

Reversed and remanded with directions.

FERNANDEZ, C.J., concurs.

SCALES, J. (dissenting)

I respectfully dissent.

In the TCPA, Congress expressly makes it unlawful for "any person . . . to make any call (other than a call made  . . . with the prior express consent of the called party) using any automatic telephone call dialing system . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).[5] The TCPA unambiguously provides for a private cause of action, and for a court of competent jurisdiction to both enjoin a TCPA violation and award the greater of actual damages or nominal statutory damages to a private plaintiff for each TCPA violation. See 47 U.S.C. § 227(b)(3)(A)-(C). Indeed, the statute allows the trial court to award treble damages if the court finds that a defendant has willfully or knowingly violated the TCPA. Id.

In his complaint, Eldridge alleges that the appellant violated the TCPA, and that, as a result of the violation, he suffered the precise nuisance injuries

---

[5] Under its rule making authority, the Federal Communications Commission – the federal agency tasked with implementing the TCPA – "has applied the statute's regulations of voice calls to text messages." Salcedo v. Hanna, 936 F.3d 1162, 1166 (11th Cir. 2019).

and privacy invasions the TCPA was enacted to protect against.[6] While Eldridge's injury allegations may not be sufficient to confer Article III standing in the Eleventh Circuit federal courts,[7] I agree with the trial court that Eldridge's allegations meet Florida's much more relaxed standing requirements.[8] Indeed, in Florida's state courts a party has standing when that party has "a sufficient interest at stake in the controversy which will be affected by the outcome of the litigation." <u>Jamylnn Invs. Corp. v. San Marco Residences of Marco Condo. Ass'n</u>, 544 So. 2d 1080, 1082 (Fla. 2d DCA

---

[6] In enacting the TCPA, Congress expressly found that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy," that "consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers," and that "[b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call . . . . , is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Telephone Consumer Protection Act of 1991, PL 102-243, §§ 5, 6, 12, 105 Stat. 2394 (1991).

[7] <u>See</u> <u>Salcedo</u>, 936 F.3d at 1172; <u>contra</u> <u>Cranor v. 5 Star Nutrition, L.L.C.</u>, 998 F.3d 686, 690 (5th Cir. 2021); <u>Gadelhak v. AT&T Servs., Inc.</u>, 950 F.3d 458, 463 (7th Cir. 2020); <u>Melito v. Experian Mktg. Sols.</u>, 923 F.3d 85, 95 (2d Cir. 2019); <u>Van Patten v. Vertical Fitness Grp.</u>, LLC, 847 F.3d 1037, 1043 (9th Cir. 2017); <u>Susinno v. Work Out World Inc.</u>, 862 F.3d 346, 352 (3d Cir. 2017).

[8] <u>See</u> <u>Dep't of Revenue v. Kuhnlein</u>, 646 So. 2d 717, 720 (Fla. 1994) ("Unlike the federal courts, Florida's circuit courts are tribunals of plenary jurisdiction. They have authority over any matter not expressly denied them by the constitution or applicable statutes. Accordingly, the doctrine of standing certainly exists in Florida, but not in the rigid sense employed in the federal system. We thus are not persuaded by the federal standing cases . . . .") (citation omitted).

1989). Put another way, to determine standing in Florida, we ask whether a judicial resolution will either resolve the rights and obligations of the party (in which case, standing exists), or, in the alternative, simply produce an advisory opinion (in which case, standing does not exist). See Pirate's Treasure, Inc. v. City of Dunedin, 277 So. 3d 1124, 1128 (Fla. 2d DCA 2019); Warren Tech., Inc. v. Carrier Corp., 937 So. 2d 1141, 1142 (Fla. 3d DCA 2006). Plainly, Eldridge's lawsuit seeks to resolve his rights, and appellant's obligations, resulting from alleged TPCA violations, and does not seek a mere advisory opinion.

In my view, Eldridge's allegations are sufficient to confer standing.[9]

---

[9] This Court's recent decision in Saleh v. Miami Gardens Square One, Inc., 353 So. 3d 1253 (Fla. 3d DCA 2023) and our sister court's decision in Southam v. Red Wing Shoe Co., 343 So. 3d 106 (Fla. 4th DCA 2022) – affirming dismissals based on lack of standing – are distinguishable because, unlike here, the plaintiffs in those cases did not allege injuries that the subject federal statute was intended to prevent. The federal statute at issue in those cases prohibits a vendor from printing all ten credit card numbers on a receipt. See 15 U.S.C. § 1681c(g)(1). That statute's purpose is to prevent credit card fraud and identity theft, not to prevent technical violations causing no actual harm to the consumer. See Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. No. 110-241, § 2(b), 122 Stat. 1565 (2008). Because the only harm alleged by the plaintiffs was that the vendors had printed out receipts (which the plaintiffs kept) that contained all ten credit card numbers, the Saleh and Southam courts determined that the plaintiffs lacked standing because they had not suffered the harm that the federal statute was enacted to prevent. Saleh, 353 So. 3d at 1255-56; Southam, 343 So. 3d at 112-13.

17